Argued and submitted April 13, 2009, at University of Oregon School of Law, Eugene, reversed and remanded May 5, petition for review denied August 18, 2010 (348 Or 669)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## DUSTIN EUGENE CEBALLOS,
*Defendant-Respondent.*

Washington County Circuit Court
C061225CR; A134983

230 P3d 954

Susan G. Howe, Senior Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Marc D. Brown, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

The state appeals from a supplemental judgment imposing restitution. It assigns error to the trial court's refusal to include reasonable funeral expenses as part of the restitution order. We review sentencing decisions, including restitution orders, for errors of law. ORS 138.222(4); *State v. Ferrara*, 218 Or App 57, 67-68, 178 P3d 250, *rev den*, 344 Or 539 (2008). For the reasons explained below, we reverse and remand.

The relevant facts are undisputed. Defendant was convicted of criminally negligent homicide for causing the death of the decedent.[1] ORS 163.145. The decedent had a life insurance policy payable to his brother, Faulkner. Although the policy did not include a benefit for the decedent's funeral expenses, at Faulkner's request, the funeral home billed the insurer for those expenses. Faulkner explained that "we had to come up with the money to—to pay for the funeral. So what we did is we asked the funeral people to bill the insurance company, since we had a life insurance policy." The bill from the funeral home lists Faulkner's name and address and reflects that the bill was paid in full. The insurer paid the funeral home directly and then paid the remainder of the policy benefit to Faulkner.

Following a restitution hearing, the trial court ordered defendant to pay restitution but, despite finding the amount of the funeral expenses to be reasonable, did not include the funeral expenses in the restitution order. The court concluded that Faulkner did not incur economic damages as a result of defendant's criminal acts, because the decedent eventually would have had funeral expenses, whenever and however he died, and that Faulkner would have paid those expenses.

This case presents questions of statutory construction, which we resolve by applying the principles set out in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), and *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143

---

[1] One of the issues on appeal concerns the meaning of the word "victim" as used in the restitution statute, which provides four alternate meanings of "victim." For clarity, therefore, we refer to the victim of the homicide as "the decedent."

(1993). In determining the meaning of a statute, we attempt to ascertain what the legislature most likely intended. We begin by examining the text of the statute in context, along with any relevant legislative history offered by the parties. *Gaines*, 346 Or at 171-72.

ORS 137.106[2] requires that restitution be ordered when a victim has suffered economic damages:

"(1) When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court, prior to the time of sentencing, evidence of the nature and amount of the damages. If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall:

"(a) Include in the judgment a requirement that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court; or

"(b) Include in the judgment a requirement that the defendant pay the victim restitution, and that the specific amount of restitution will be established by a supplemental judgment based on a determination made by the court within 90 days of entry of the judgment. In the supplemental judgment, the court shall establish a specific amount of restitution that equals the full amount of the victim's economic damages as determined by the court. * * *

"* * * * *

"(4) If a judgment or supplemental judgment described in subsection (1) of this section includes restitution, a court may delay the enforcement of the monetary sanctions, including restitution, only if the defendant alleges and establishes to the satisfaction of the court the defendant's inability to pay the judgment in full at the time the judgment is entered. If the court finds that the defendant is unable to pay, the court may establish or allow an appropriate supervising authority to establish a payment schedule, taking into consideration the financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant."

---

[2] Except as noted, statutory citations are to the 2005 version of the statutes.

The terms "victim" and "economic damages" are defined by statute. ORS 137.103(4) defines "victim" as:

"(a)   The person against whom the defendant committed the criminal offense, if the court determines that the person has suffered economic damages as a result of the offense.

"(b)   *Any person* not described in paragraph (a) of this subsection *whom the court determines has suffered economic damages as a result of the defendant's criminal activities*.

"(c)   The Criminal Injuries Compensation Account, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection.

"(d)   An insurance carrier, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection."

(Emphasis added.) ORS 137.103(2) provides that " '[e]conomic damages' has the meaning given that term in ORS 31.710, except that 'economic damages' does not include future impairment of earning capacity." ORS 31.710(2)(a) provides, in turn:

" 'Economic damages' means objectively verifiable monetary losses including but not limited to *reasonable charges necessarily incurred for* medical, hospital, nursing and rehabilitative services and other health care services, *burial and memorial expenses*, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."[3]

(Emphasis added.)

---

[3] In 2005, the legislature amended the restitution statutes to provide for restitution for "economic damages." Or Laws 2005, ch 564. Before those amendments, restitution was available for "pecuniary damages," which were defined as

"all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling."

ORS 137.103(2) (2003).

■　　　Thus, under ORS 137.106, the question is whether Faulkner is "a victim" who "suffered economic damages"; if so, the court must require "restitution in a specific amount that equals the full amount of the victim's economic damages." Under ORS 137.103(4)(b) and ORS 31.710(2)(a), Faulkner is a victim if he suffered economic damages— including reasonable charges necessarily incurred for burial and memorial expenses—as a result of defendant's criminal activities.

There is no dispute that the funeral expenses at issue here were "reasonable charges" for "burial and memorial services" within the meaning of ORS 31.710(2)(a). The parties disagree, however, about whether the expenses were "necessarily incurred" under that statute. The state contends that the legislature chose to make a defendant responsible for funeral expenses when the defendant's criminal activities cause a death. Defendant argues that Faulkner did not "incur" funeral expenses at all, because he was not billed for them and because, given that the decedent's death triggered the insurance benefit that was used to pay for the funeral, Faulkner was not worse off financially because of the decedent's death.

Defendant's argument is foreclosed by *White v. Jubitz Corp.*, 347 Or 212, 219 P3d 566 (2009), in which the Supreme Court considered the same statutory definition of "economic damages" in the context of a negligence claim. There, the defendant—citing a dictionary defining "incur" as "[t]o become liable or subject to," *id.* at 232 n 11 (brackets in *White*)—contended that the plaintiff had not "incurred" a "monetary loss" with respect to medical charges that had been written off as a result of the plaintiff's eligibility for Medicare benefits. *Id.* at 232. Among other reasons for rejecting the defendant's argument, the court explained:

> "A plaintiff who is injured and who obtains necessary medical treatment becomes 'liable or subject to' reasonable charges for that treatment and thereby 'incurs' them. *ORS 31.710 does not require that a plaintiff also pay or otherwise satisfy those charges. Whether or by what means the plaintiff or a third party satisfies medical charges is a matter between the plaintiff, the third party, and the medical providers.* ORS 31.710 does not make a plaintiff's right to

assert a claim for economic damages against a tortfeasor dependent on those arrangements."

*Id.* at 234 (emphasis added).

■     Similarly here, the decedent died as a result of defendant's conduct, and Faulkner obtained necessary funeral services. The billing arrangements for the decedent's funeral expenses are a matter between Faulkner, the insurer, and the funeral home. Regardless of the source of the funds used to pay for the decedent's funeral, when Faulkner obtained funeral services for the decedent, Faulkner became subject to charges for those services and thus incurred the charges. The funeral expenses were economic damages under ORS 31.710.

Defendant contends, however, that for an expense to be "necessarily incurred" within the meaning of the statute, that expense must be one that the victim was required to pay, not one that the victim volunteered to pay. In defendant's view, because Faulkner chose to pay for the funeral, Faulkner did not "incur" damages and therefore is not a "victim." We rejected a related argument concerning the meaning of "incur" in *PGE v. Jungwirth Logging, Inc.*, 151 Or App 789, 951 P2d 1101 (1997), *rev den*, 327 Or 432 (1998). There, the plaintiff had settled a negligence suit brought by the estate of the defendant's employee, who was electrocuted by one of the plaintiff's high-voltage power lines in an on-the-job accident. *Id.* at 791. After settling with the estate, the plaintiff sued the defendant under a statute providing that, if a person or business violates safety rules concerning operations near high-voltage power lines and the violation results in or is a contributing cause of an accident, the person or business is liable to the utility for "all costs and expenses, including damages to any third persons, incurred by the utility as the result of the accident." *Id.* (emphasis omitted). The defendant argued that the plaintiff "incurred" costs and expenses only if it was liable to the employee's estate. Noting that the common meaning of "incur" is "to become liable *or* subject to," we concluded that the plaintiff had incurred the settlement costs because, but for the defendant's actions, the plaintiff "would not have been subject to resolving [the employee's estate's] action through settlement or litigation." *Id.* at 793;

*see also Anderson v. Wheeler,* 214 Or App 318, 322, 164 P3d 1194 (2007) (construing "incurred" in an attorney fee statute to mean to "become liable or subject to" and thus to require that the party seeking fees be liable for the payment of fees).

More recently, in *State v. Romero-Navarro,* 224 Or App 25, 29, 197 P3d 30 (2008), *rev den,* 348 Or 13 (2010), we relied on that definition of "incur" in concluding that the defendant was properly ordered to pay restitution for funeral expenses. There, the defendant was convicted of first-degree manslaughter for killing a 17-year-old child, and the state sought restitution, payable in part to the child's parents and in part to the Criminal Injuries Compensation Account (account), for funeral expenses. *Id.* at 27. The defendant argued that, because the child's father's employer had paid most of those expenses and the account had paid the remainder, the parents had not incurred the expenses. *Id.* at 28. Rejecting that argument, we explained that "[t]here is a reasonable inference from the record that the victim's family was *subjected* to the enumerated burial expenses for their child, and would have had to pay them if the employer had not paid them." *Id.* at 29 (citing *White v. Jubitz Corp.,* 219 Or App 62, 66, 182 P3d 215 (2008), *aff'd,* 347 Or 212, 219 P3d 566 (2009)).

Here, likewise, the record shows that Faulkner was subjected to the decedent's burial expenses. Faulkner's testimony and the bill from the funeral home indicate that he had agreed to be responsible for the funeral expenses. But for the defendant's criminally negligent homicide of the decedent, Faulkner would not have been subjected to those expenses. Faulkner therefore was a victim who incurred economic damages.

Finally, we consider whether Faulkner incurred the funeral expenses "as a result of the defendant's criminal activities." ORS 137.103(4)(b). The answer is apparent: Simply put, if defendant had not killed the decedent, the funeral expenses at issue would not have been incurred. Defendant nevertheless contends that, because the decedent would someday have died anyway and would have had funeral expenses, the funeral expenses here were not a result of defendant's criminal activity. As the state aptly responds,

however, defendant's construction of the statutes would mean that, because everyone will die eventually, funeral expenses never could be included in economic damages. Such a result is contrary to the legislature's choice to include "burial and memorial expenses" in the definition of economic damages that may be the subject of restitution. Accordingly, we conclude that the decedent's funeral expenses were a result of defendant's act of criminally negligent homicide.

Because Faulkner suffered economic damages in the form of funeral expenses as a result of defendant's criminal activities, the trial court erred when it excluded the decedent's reasonable funeral expenses from the restitution that defendant was ordered to pay.

Reversed and remanded.