Argued and submitted May 28, reversed and remanded for resentencing;
otherwise affirmed August 11, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MITCHELL AVERY STECKLER,
*Defendant-Appellant.*

### Washington County Circuit Court
C080741CR; A140148

237 P3d 882

Eric Johansen, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Cecil Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction and sentence for robbery in the second degree, ORS 164.405, challenging the amount of restitution that the trial court imposed as part of the sentence. Because we conclude that there is insufficient evidence to support the restitution imposed, we reverse and remand for resentencing, but otherwise affirm.

The relevant facts are undisputed. Defendant, wearing a ski mask and wielding what appeared to be a firearm, stole OxyContin from two Tigard Rite Aid pharmacies: one on Scholls Ferry Road and another on Main Street. Federal law requires a pharmacy that has been the victim of a theft of a controlled substance to submit a form to the Drug Enforcement Administration (DEA) that describes the security measures the pharmacy is taking to prevent future thefts. If the DEA deems the pharmacy's stated security measures inadequate, the DEA is authorized to require the pharmacy to take additional security measures. Additionally, if the pharmacy fails to institute security measures that satisfy the DEA, the DEA is authorized to order sanctions that range from imposing monetary fines to closing the pharmacy.

After the robberies in this case, a loss prevention manager for Rite Aid, Feckner, submitted two forms to the DEA—one for each pharmacy. On the form for the Scholls Ferry Road pharmacy, Feckner reported that Rite Aid intended to install a surveillance system to monitor the pharmacy's prescription drop-off and pick-up windows. Based on conversations that he had had with Rite Aid's pharmacy district manager and operations manager, Feckner believed that doing so would be the most cost-effective security measure that would satisfy the DEA. On the form for the Main Street pharmacy, however, Feckner noted that the store would continue to rely on its existing security system, without describing that existing system. Because that store would soon be remodeled, Rite Aid intended to advise the DEA that it planned to install a surveillance system as part of the remodel in the event that the DEA requested Rite Aid to take additional measures.

Defendant was charged with two counts of robbery in the second degree and one count of theft in the first degree. Pursuant to a plea agreement, defendant was convicted of

one count of second-degree robbery. The state then requested $3,489.73 in restitution to be paid to Rite Aid—$1,514.73 for the stolen OxyContin and $1,975 for the surveillance system for the Scholls Ferry Road pharmacy.

Feckner testified as to the value of the OxyContin at the restitution hearing. He also testified about Rite Aid's purchase of the surveillance system. As part of his testimony in that regard, Feckner described the DEA forms that he completed and his understanding of the DEA's requirements about adequate security measures, although he stated that he was unaware of any DEA regulation that required the installation of a surveillance system. The court ordered defendant to pay the full amount of restitution requested by the state.

■ On appeal, defendant takes issue only with the portion of the restitution award that relates to the surveillance system. He argues that, because the restitution statutes do not include the cost of preventive security measures in the list of recoverable losses, he cannot be required to pay for Rite Aid's surveillance system purchase. Alternatively, defendant argues that the expense of the surveillance system was not "incurred" by Rite Aid within the meaning of the restitution statutes, because Rite Aid's requirement to purchase the surveillance system resulted not from defendant's crime but from its representation to the DEA that it intended to install such a system.

The state responds that, because the legislature's list of recoverable losses in the restitution statutes is not exclusive, the fact that a particular loss is not expressly stated is not dispositive. In fact, the state contends, Rite Aid's purchase of the surveillance system is similar to the losses expressly included in the restitution statutes, in that they are all verifiable, tangible losses. The state also disagrees with defendant's alternative argument, that is, that Rite Aid did not "incur" the expense of purchasing a surveillance system. The state maintains that defendant's robbery was a "but for" cause of the expense, because Rite Aid would not have purchased a surveillance system had it not been for defendant's robbery.

■ We begin by setting out the relevant statutes. ORS 137.106(1) provides, in part:

> "When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court, prior to the time of sentencing, evidence of the nature and amount of the damages. If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall include [a full, partial, or nominal restitution award] in the judgment[.]"

For the purposes of that statute, "economic damages" is defined by ORS 31.710. ORS 137.103(2)(a). ORS 31.710, in turn, provides, in part, that

> " '[e]conomic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

A crime victim "incurs" an expense for the purposes of awarding restitution if the victim becomes "liable or subject to" pay the expense. *State v. Romero-Navarro*, 224 Or App 25, 29, 197 P3d 30 (2008), *rev den*, 348 Or 13 (2010) (because the family of a manslaughter victim would have been required to pay burial expenses had they not been paid for by the father's employer, the family was entitled to recover those expenses as restitution); *see also State v. Ceballos*, 235 Or App 208, 213, 230 P3d 954 (2010) (quoting *White v. Jubitz Corp.*, 347 Or 212, 232 n 11, 219 P3d 566 (2009)).

We begin with defendant's argument that Rite Aid did not "incur" the expense of the surveillance system, because it is dispositive. In short, we agree with defendant that the state failed to prove that, as a result of his robbery, Rite Aid became "liable or subject to" that expense. The state did prove that, because of defendant's crime, Rite Aid was required to advise the DEA—by completing a form—as to

what measures it was taking to prevent future losses. The problem is that the state did not prove that Rite Aid was required by the DEA to take any particular measures at all.

Accordingly, the court erred in including the $1,975 to cover Rite Aid's cost to purchase the surveillance system in its award of restitution.

Reversed and remanded for resentencing; otherwise affirmed.