Submitted September 30, 2011, affirmed March 28, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEREMY KEITH JORDAN,
*Defendant-Appellant.*

Multnomah County Circuit Court
080532268; A142812

274 P3d 289

Peter Gartlan, Chief Defender, and Elizabeth Corbridge Ranweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Erin C. Lagesen, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

After a guilty plea, defendant was convicted of second-degree assault, ORS 163.175, and DUII, ORS 813.010.[1] He appeals from a supplemental judgment in which the trial court imposed restitution for expenses incurred by the victim, who was struck by defendant's car while defendant was driving under the influence. The supplemental judgment awarded a total of $887,793 in restitution, including a payment of $204,426 directly to the victim and his spouse, and payment of $673,367 to Providence Health Plans in satisfaction of its lien for the victim's medical expenses. In this appeal, defendant contends that the state's evidence as to many of the items of restitution was insufficient to establish "economic damages," as defined in ORS 31.710(2), so as to provide a basis for an award of restitution under ORS 137.106. We affirm.

The facts of the underlying crimes and the victim's injuries are not disputed. Defendant admitted that, acting recklessly, under circumstances manifesting extreme indifference to the value of human life and while under the influence of alcohol, defendant drove his car and failed to yield the right of way to the victim, hitting him and causing him serious physical injury, including brain injury. The victim spent six months in the hospital and underwent multiple surgeries.

ORS 137.106(1) provides that,

"[w]hen a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court, prior to the time of sentencing, evidence of the nature and amount of the damages. If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall include one of the following in the judgment.

"(a) A requirement that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court.

---

[1] In exchange for defendant's guilty plea to those two counts, the trial court dismissed six remaining counts.

"(b)   A requirement that the defendant pay the victim restitution and that the specific amount of restitution will be established by a supplemental judgment based upon a determination made by the court within 90 days of entry of the judgment. In the supplemental judgment, the court shall establish a specific amount of restitution that equals the full amount of the victim's economic damages as determined by the court. The court may extend the time within which the determination and supplemental judgment may be completed for good cause. The lien, priority of the lien and ability to enforce the specific amount of restitution established under this paragraph by a supplemental judgment relates back to the date of the original judgment that is supplemented.

"(c)(A)   A requirement that the defendant pay the victim restitution in a specific amount that is less than the full amount of the victim's economic damages, with the consent of the victim.

"(B)   If the defendant is convicted of a person felony, as that term is defined in the rules of the Oregon Criminal Justice Commission, a requirement that the defendant pay the victim restitution in a specific amount that is less than the full amount of the victim's economic damages, only with the written consent of the victim."

Restitution is awarded under ORS 137.106 when the state establishes evidence of "(1) criminal activities, (2) pecuniary damages, and (3) a causal relationship between the two." *State v. Edson*, 329 Or 127, 132, 985 P2d 1253 (1999). In a felony case such as this, if the trial court finds that the victim incurred economic damages, the court is required to impose restitution in the full amount of economic damages, unless the victim consents to a lesser award. ORS 137.106(1)(c)(B); *State v. Thompson*, 231 Or App 193, 197, 217 P3d 697 (2009), *rev den*, 349 Or 246 (2010).

Pursuant to ORS 137.103, "economic damages" as used in ORS 137.106 has the meaning provided in ORS 31.710(2)(a):

" 'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and

> rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

The only exception to economic damages applicable to restitution under ORS 137.106 is that it "does not include future impairment of earning capacity." ORS 137.103(2)(a). This court reviews for legal error the trial court's legal conclusions with respect to an award of restitution. *State v. Carson*, 238 Or App 188, 191, 243 P3d 73 (2010). We review the trial court's factual findings in connection with an award of restitution to determine whether there is any evidence to support them. *Id.*

Defendant's nine assignments of error raise objections to specific items of restitution, and we consider them in turn:

## PROVIDENCE HEALTH PLANS' LIEN

The court awarded $673,367 to Providence Health Plans, based on the Providence Health Plans's lien ledger submitted by the state as "Exhibit 3." *See* ORS 742.536 (provides for an insurer's lien for benefits furnished for a person injured in a motor vehicle accident against amounts recovered by the injured person from third parties). The lien ledger consists of a list of charges that Providence Health Plans actually paid to service providers for the victim's medical expenses. With respect to one large amount, a payment to Legacy Emanuel Hospital in the amount of $454,696.68, for the dates May 10, 2008 to June 19, 2008, defendant argued that

> "the exhibit presented to this Court essentially is nothing more than a number. It's very hard to know—I think impossible for this Court to know exactly what that number represents, how it breaks down and so on."

The trial court and defense counsel speculated together that the amount probably represented a hospital stay, but defense

counsel then said, "But again, Judge, we don't really know."[2] The court awarded Providence Health Plans the full amount of its lien.

On appeal, defendant now contends that the state failed to establish that Providence Health Plans's lien was based on "reasonable charges necessarily incurred." He argues that medical bills on their own do not establish the necessity of medical treatment for purposes of determining whether the cost of the treatment is properly awarded as economic damages, and that Providence Health Plans's lien is, essentially, a list of medical bills.

We agree with the state that defendant failed to preserve that contention for appeal. A party must provide the court with an explanation of his objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit the court to consider and correct the error immediately. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Defendant's contention to the trial court that it was impossible to know what the large item on the exhibit "represents, how it breaks down and so on" did not inform the court that defendant was objecting to the amount of the lien for the reason that medical bills, by themselves, do not establish a reasonable charge necessarily incurred.

---

[2] The full discussion of defendant's objections to the items on the lien ledger was as follows:

"[DEFENSE COUNSEL]: I object to the—to [defendant] being obligated to pay $673,000 on the lien to Providence with the understanding that I am asking this Court to basically determine what the law is in regard to insurance companies as victims in cases like this.

"And I'm also going to point out that the exhibit presented to this Court essentially is nothing more than a number. It's very hard to know—I think impossible for this Court to know exactly what that number represents, how it breaks down and so on.

"THE COURT: You don't have the Providence Health Plans lien ledger:

"[DEFENSE COUNSEL]: I do, but I'm referring to that one very large number, which is 400 or $500,000 number about halfway down the first page.

"THE COURT: The 454?

"[DEFENSE COUNSEL]: The 454. What is that? How does that break down? What does it represent? That's—

"THE COURT: I'm guessing that's the hospital stay.

"[DEFENSE COUNSEL]: I'm guessing it probably is. But again, Judge, we don't really know."

Defendant asks, nonetheless, that we consider his contention as plain error apparent on the record. Defendant is correct that medical bills do not establish reasonable charges necessarily incurred. *White v. Jubitz Corp.*, 219 Or App 62, 68, 182 P3d 215 (2008), *aff'd*, 347 Or 212, 219 P3d 566 (2009). However, as the state also correctly points out, Providence Health Plans's lien ledger does not list medical bills. Rather the lien ledger lists the amounts that Providence Health Plans actually paid to medical service providers.[3] We have never addressed whether an award of restitution may be based on an insurer's statutory lien amount. Thus, the issue is undecided. One of the three factors this court must consider in determining whether an error is apparent on the record is that the legal point is not reasonably in dispute. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991). We do not necessarily agree with defendant that his interpretation is correct. At a minimum, whether a medical lien is sufficient to support an award of restitution is reasonably in dispute. Accordingly, defendant's argument does not qualify as an error of law apparent on the record. Thus, we decline to consider as plain error defendant's contentions on appeal with respect to the restitution amount for the Providence Health Plans's lien.

## FORECASTED ECONOMIC DAMAGE

Next we consider defendant's assignments of error concerning various items of restitution that the trial court awarded to the victim and his spouse based on an estimate of future expenses. ORS 137.106 requires that restitution be ordered where a victim has suffered "economic damages." "Economic damages" for purposes of restitution may include "reasonably predictable and easily measurable future treatment expenses." *State v. Donahue*, 165 Or App 143, 146, 995 P2d 1202 (2000). The trial court awarded restitution to the victim based on certain "forecasted losses" listed in the state's Exhibit 2. Those were amounts that the victim and his wife

---

[3] ORS 87.555(1) limits a hospital's or physician's lien amount to "the reasonable value of such medical treatment." Given that Providence Health Plans paid what it described in the lien (even though no statutory lien was filed), it is at least possible to infer that Providence Health Plans was satisfied that the medical bills it paid were reasonable medical charges necessarily incurred as a result of defendant's criminal conduct.

expected to spend on the victim's behalf in 2009 as a result of his 2008 injury. Defendant made a general objection to the items listed in Exhibit 2:

> "I'm not going to go through * * * this line by line * * * and argue item by item to the court on the issue of whether or not these forecasted values are objectively reasonable. I will specifically address the reasonableness, necessity of some of those charges, but I will just leave it to the Court to determine whether or not these amounts * * * have been shown by the evidence to be objectively verifiable. And that's the State's burden. There is no necessity for me to produce evidence to show that they are not objectively verifiable. The Court's determination on that has to be based solely on the State's evidence. And I submit that on a number of these charges * * * the State has not met the burden to prove that these are objectively verifiable amounts."

Defendant contends that his general objection preserved for appeal an objection to the objective reasonableness of each item listed on Exhibit 2. We reject the contention. Defendant specifically told the court that he would *not* go down the list with respect to whether individual items were objectively *reasonable*. There were 24 items for future expenses listed on Exhibit 2. Defendant's general objection that "a number of" the charges on the list were not objectively *verifiable* did not preserve for appeal the contention that all of the items were not reasonably incurred.

There were several items listed on Exhibit 2 to which defendant raised separate objection: (1) $5,000 for the services of a naturopathic physician, (2) $3,000 for special organic foods, (3) $5,000 for professional services, and (4) $4,000 for the cost of a conservatorship. At trial, defendant objected to the *necessity* of naturopathic medicine and special foods. On appeal, he contends that the evidence was insufficient for the trial court to find that those naturopathic medical and food expenses were "reasonable charges necessarily incurred." We conclude that defendant's specific objections in the trial court preserved his contention for appeal that those charges were not *necessarily* incurred, but did not preserve his contention that the charges were not *reasonable*. We further conclude that any error by the trial court in determining that the charges were reasonable was not plain.

An expense is "necessarily incurred" for purposes of restitution if, "because of the defendant's crime," the victim becomes liable for or subject to the expense. *State v. Steckler*, 236 Or App 524, 528-29, 237 P3d 882 (2010). In this case, the victim's wife testified that the victim was incurring all of the expenses listed on Exhibit 2, including expenses for naturopathic services and organic foods, because of the brain injury the victim suffered as a result of defendant's crime. The victim's wife testified that the victim had seen a naturopath who was treating him and that she believed from what she had seen that the naturopathic treatment was "really successful." The victim's wife explained that the organic foods were necessary to spark the victim's brain cells. Although that is not a great deal of evidence regarding the necessity of naturopathic treatments and organic foods, it is *some* evidence from which the trial court could find that the disputed expenses were necessary, and that is sufficient. *State v. Carson*, 238 Or App 188, 191, 243 P3d 73 (2010) (on review of restitution judgment, appellate court is bound by trial court's findings of fact if there is evidence in the record to support them).

Defendant objected separately to the restitution amount of $5,000 for anticipated professional services. It is undisputed that he preserved for appeal his contention that the evidence was insufficient for the trial court to find that the anticipated professional expenses were objectively verifiable and reasonable charges necessarily incurred. We have reviewed the record, however, and conclude that there was evidence from which the trial court could find that the professional services—which consisted of anticipated fees for a case manager to help the victim's spouse with the financial and insurance issues that arose as a result of the victim's injuries—were reasonable charges necessarily incurred as a result of the victim's injuries.

As to the question whether the expenses for professional services were "objectively verifiable," we agree with the state that, for purposes of ORS 31.710, the state need not provide a detailed itemization of the expected expenses in order for them to qualify as "objectively verifiable" economic damages. We said in *DeVaux v. Presby*, 136 Or App 456, 463, 902 P2d 593 (1995), that "the key is the extent to which damages are *capable* of verification by objective facts, not the

extent to which they are verified at trial." 136 Or App at 463 (emphasis in original). The professional services listed on Exhibit 2 were subject to that type of verification, through receipts, billings, or other evidence showing what the victim had paid for them, and the state did not need to present additional objective verification of the services in order for the court to award restitution for those amounts.

The trial court ordered defendant to pay $4,000 in restitution for the victim's anticipated costs for a conservatorship, and defendant contends that that expense is not objectively verifiable. For the reason explained above with respect to professional expenses, we conclude that the victim's anticipated expense for a conservatorship was subject to verification so as to be "objectively verifiable."

Defendant contends on appeal that the state failed to prove that the victim's forecasted expenses for out-of-network medical charges, medicine, and miscellaneous expenses were objectively verifiable. Defendant did not make specific objections with respect to those expenses in the trial court, and we conclude for that reason that his arguments on appeal are not preserved. Any error by the trial court in awarding restitution for those amounts was not plain, and we decline to address defendant's contentions on appeal.

At the time of the accident, the victim was a mortgage broker, and the victim and his wife were planning to move to Sweden to begin a business there. The trial court awarded the victim $100,965 for lost income for the period of May 10, 2008 (the date of the accident) to April 24, 2009 (the date of the restitution hearing), based on an estimate of the victim's average income between 2003 and 2007. Defendant argued below that, because of the variations in victim's past income and the hypothetical nature of the victim's future employment, the victim's earnings over the past five years were not competent evidence for estimating what he could have earned during the year after the accident. Defendant now asserts that his arguments at trial regarding the competency of evidence of past earnings to establish lost income preserved for appeal his current argument that, because the victim's future income is not susceptible to exact computation, it does not constitute economic damages and therefore is

not recoverable as restitution. We reject the contention that the argument was preserved. The essence of defendant's argument below was that the state had not put on persuasive evidence of lost income. The current argument is that restitution is not available to the victim for lost income because, due to the fluctuations in the victim's past income, it is not possible to estimate with certainty his lost income as a result of his injuries, and damages for lost income would therefore constitute noneconomic damages. We agree with the state that defendant did not make that particular argument in the trial court, and we decline to consider his claim as plain error on appeal.

## RESTITUTION FOR LOST INCOME
## AFTER THE DATE OF THE PLEA AGREEMENT

As a part of his plea agreement entered November 26, 2008, defendant agreed that the state would have up to one year from the date of entry of defendant's plea in which to present evidence of the victim's expenses compensable by restitution. After a restitution hearing on April 24, 2009, the trial court awarded restitution for lost income as of that date in the supplemental judgment of restitution signed by the judge on April 30, 2009. Defendant argued below and continues to argue on appeal that the trial court erred in awarding restitution for lost income beyond the date of the plea agreement, November 26, 2008. We agree with defendant that he preserved that issue for appeal; however, we reject it on its merits.[4]

The time frame for the measurement of restitution for lost income presents a question of statutory construction. Under ORS 137.106, when a person is convicted of a felony that has resulted in economic damages, the court is required to award the full amount of the victim's economic damages "as determined by the court." The statute's requirement that a victim be awarded the full amount of the victim's economic damages would generally obviate the need to refer to a specific date as of which the victim's economic damages are to be determined. However, as noted, under ORS 31.710 and ORS

---

[4] He now argues that restitution for lost income stopped accruing on the date the court accepted his guilty plea, October 23, 2008.

137.103, for purposes of restitution under ORS 137.106, "economic damages" "does not include future impairment of earning capacity." Thus, it becomes relevant when a victim's impairment becomes "future." The statute does not provide a method for determining that circumstance. In defendant's view, future impairment is any impairment that occurs after the date of trial or, as here, in a case where the defendant enters a guilty plea, after the date of the defendant's guilty plea. In the state's view, the appropriate cut-off is the date of the trial court's determination of restitution.

We agree with the state on that issue. ORS 137.106(1)(a) expresses the legislature's intention that the victim be compensated for the *full amount* of the victim's damages, "as determined by the court." The court determines the full amount of the victim's damages either at the time of sentencing ORS 137.106(1)(a), or by supplemental judgment after a restitution hearing. ORS 137.106(1)(b). The date of the determination by the trial court is the date as of which the loss is determined. Thus, the victim's loss of income as of the date of the trial court's determination of restitution is a current loss and not a future impairment of earning capacity.[5] For that reason, we conclude that a victim is entitled to restitution for loss of income up to the date that the trial court determines the full amount of the victim's economic damages and awards restitution. In this case, the court held restitution hearings for the purpose of determining the full amount of the victim's economic damages and signed a supplemental judgment awarding restitution. The trial court therefore did not err in awarding restitution for income lost up to the date of restitution hearing.[6]

Affirmed.

---

[5] We expressly do not determine the differences between loss of income and future impairment of earning capacity. Chief Judge Schwab's opinion in *Ford v. SAIF*, 7 Or App 549, 552-53, 492 P2d 491 (1972), provides a helpful discussion of the difference between lost income and loss of earning capacity.

[6] In view of our conclusion, we do not address the state's alternative suggestion that the statute allows for restitution for future lost income as distinct from future impairment of earning capacity.