Submitted July 29, affirmed November 5, 2014, petition for review denied March 26, 2015 (357 Or 112)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CRAIG ALAN PUMPHREY,
*Defendant-Appellant.*

Washington County Circuit Court
D122773M; A153140

338 P3d 819

Peter Gartlan, Chief Defender, and Sarah Laidlaw, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

**HADLOCK, J.**

Defendant pleaded guilty to two counts of violating a court's stalking protective order (SPO), ORS 163.750, and the trial court entered convictions on that plea. Defendant appeals from a supplemental judgment in which the trial court imposed restitution totaling $2,674.76 for expenses incurred by the victim. On appeal, defendant contends that the state's evidence as to five items of restitution was insufficient to establish "economic damages," as defined in ORS 31.710(2), and therefore provided an inadequate basis for a restitution award under ORS 137.106. We affirm.

We are bound by the trial court's factual findings if they are supported by any evidence in the record, and we review the court's legal conclusions for errors of law. *State v. Jordan*, 249 Or App 93, 96, 274 P3d 289, *rev den*, 353 Or 103 (2012). If the trial court did not make express findings on a disputed point of fact, we presume that the court implicitly found the facts consistent with the judgment it entered. *See State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) ("If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion."). Accordingly, we state the facts consistently with the trial court's explicit and implicit factual findings, which the record supports.

The victim obtained a permanent SPO against defendant, with whom she had no prior relationship, in 2010 after defendant "sought her out through her place of work and had waited for her outside of work." The SPO prohibited defendant from having contact with the victim, including by coming into her visual or physical presence or by waiting outside her home, property, work, or school. On July 2, 2012, defendant returned to the victim's place of work, where he approached her and asked in a "deep tone of voice" if she "missed him." The victim reported the incident to police and reported that defendant also had come to her place of work on July 1, 2012.

The victim sought medical attention for "massive panic attacks" that began about a week after defendant's

July 2012 SPO violations. She saw a physician nine times for treatment of those panic attacks and was prescribed medications as a result. According to the victim, her doctor explained that her panic attacks were the result of her having reached "a breaking point" at which she "couldn't handle it anymore." The victim missed 18 days of work, several of which were to attend her doctor's appointments. The victim also obtained counseling and group therapy. Her counselor recommended, as part of treatment, that she collect police reports about defendant's conduct from another city.

The victim also missed one day of work to facilitate having her locks changed at home. She testified at the restitution hearing that defendant had "found out [her] home address and [she] needed to change [her] locks," explaining further that she needed to have dead bolts installed. The victim also testified that she had rented a temporary residence "until [she] could get [her] locks changed and make [her] home safe." She explained that she had been unable to stay with friends because "[t]hey were fearful of the situation as well."

The victim also changed her phone number. In explanation of that action, she testified that she had received one phone call from defendant shortly after he visited her at work. On that call she could hear "heavy breathing" and defendant "kept trying to ask [her] if [she] was okay" and said that "he was sorry." She testified that "district attorneys, everybody had told me I might as well [change my phone number] because my personal information was let out." She also had received several "hang-up calls," which stopped once she changed her number.

Defendant was charged with four counts of violating a court's SPO and, as noted above, was convicted of two counts pursuant to a plea agreement. After hearing the victim testify to the facts described above and reviewing other evidence in the record, the trial court determined that the victim's expenses were the result of defendant's criminal activities and imposed $2,674.76 in restitution in a supplemental judgment:[1]

---

[1] The trial court imposed restitution for several additional items that defendant does not challenge. For purposes of this appeal, we focus our discussion on the challenged items.

"But [the time taken off of work] seems to be related to this particular case because but for [defendant's] contact [the victim] wouldn't be having to do all the things that she testified that she had to do.

"And it's not our place to say that getting police reports are not *** necessarily related to this case. But for [defendant's] conduct [the victim] felt she needed to get those police reports and do some things and put some things together for crime victim's comp and all those sorts of things that she did.

"So I'm certainly not going to second guess what she thought she needed to do. And I do find that it's related to the conduct of the defendant. So I would be granting those wages.

"*****

"I am going to grant the $100 to change her number over. ***

"But the actions of the defendant caused her to change phones and that's for certain, so I would be granting that $100 there, but not the [monthly fee for the new phone]. ***

"*****

"But for defendant's conduct [the victim] wouldn't have thought that she needed to change her locks. ***

"*****

"*** So there was the $400 to stay at a safe house during the court proceedings. Again, it's not the Court's job to decide whether or not it was—I don't want to use the word proper, but if it was—well, I'll use it because I can't think of a better word right now—whether it was proper or not for her to stay at a safe house.

"The issue, I think, for the Court to decide is was her need to go to a safe house related to the defendant's conduct. We kind of take the victim as we find them as you might say, so I do find that it's related to defendant's conduct, [I] would order that.

"And the copies for the police reports, this $37, that's— she felt that she needed the police reports for various reasons and that's appropriate and I'll order that."

The only issue before us on appeal is whether the trial court erred by awarding restitution for certain expenses the victim incurred after the SPO violations. We begin our analysis by setting out the relevant statutes. ORS 137.106(1) provides, in part:

> "When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or within 90 days after entry of the judgment, evidence of the nature and amount of the damages. * * * If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

For the purposes of that statute, "economic damages" is defined by ORS 31.710(2)(a):

> " 'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past * * * impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."[2]

In short, there are three prerequisites to an order of restitution: (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two. *State v. Carson*, 238 Or App 188, 192, 243 P3d 73 (2010) (citing *State v. Stephens*, 183 Or App 392, 395, 52 P3d 1086 (2002)). "Criminal activities" means "any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1).

---

[2] The statutory definition of "economic damages" also includes "future impairment of earning capacity." ORS 31.710(2)(a). However, that aspect of the definition does not apply to restitution awarded under ORS 137.106(1). ORS 137.103(2)(a).

On appeal, defendant objects to five specific items of restitution: (1) the cost of changing the victim's phone number; (2) the cost of changing locks on the victim's home; (3) the cost of the victim renting a temporary residence; (4) the victim's lost wages from one day's work when she facilitated changing her locks; and (5) the cost of obtaining police records from a different incident in a different city. Defendant makes two main arguments. First, he argues that the contested costs did not constitute "economic damages" within the meaning of the restitution statutes. Defendant contends that the contested costs "were made in order to provide security against *future* crimes, not the crimes for which defendant was convicted," and therefore were not "reasonably and necessarily incurred." (Emphasis added.) Second, defendant argues that there is no "causal connection" because "there is *no evidence* to connect the criminal acts at issue to the contested expenses." (Emphasis added.) As presented in this case, both of those arguments turn on one central question: whether defendant's criminal activity was a "but for" cause of the expenses the victim incurred. *See State v. Ceballos*, 235 Or App 208, 215, 230 P3d 954, *rev den*, 348 Or 669 (2010) ("But for the defendant's criminally negligent homicide of the decedent, [the victim] would not have been subjected to those expenses. [The victim] therefore * * * incurred economic damages."); *State v. Bullock*, 135 Or App 303, 307, 899 P2d 709 (1995) ("For purposes of restitution, causation is met by applying a 'but for' standard.").

Although defendant's criminal activities must be a "but for" cause of the victim's economic damages, the damages need not be the *direct* result of defendant's criminal activity. *Stephens*, 183 Or App at 396; *see also Bullock*, 135 Or App at 307 (concluding that contested expenses were not "too remote to be considered the results of defendant's crime" because "emotional and psychological problems that required the victim's removal from the home were a natural consequence of defendant's criminal activities"). For example, in *State v. Doty*, 60 Or App 297, 653 P2d 276 (1982), a defendant was originally indicted for a burglary in which the victim claimed the loss of items that had a value of more than $3,000. The defendant eventually pleaded guilty to theft of items that had a value of less than $200, but the

trial court imposed restitution of $2,000, based on the value of all the items stolen from the house. Although the defendant had admitted to kicking in the victim's door and stealing several items, he claimed that someone else must have taken the rest. We upheld the restitution award, explaining that the entire loss resulted from the defendant's criminal activities:

> "Defendant does not seriously dispute the loss of the missing items but denies having taken the jewelry himself. However, regardless of whether defendant actually stole the jewelry, the entire loss 'resulted' from his 'criminal activities,' including the admitted kicking in of the victim's door, because it at least created free access to the home for the hypothetical subsequent theft."

*Id.* at 300.

Similarly, in this case, we conclude that the record includes some evidence from which the trial court could find that the disputed expenses resulted from defendant's criminal activities. Defendant argues that he "never admitted to and was not convicted of calling [the victim] on her phone or going to [the victim's] home. In fact, the state did not present any evidence that defendant knew where [the victim] lived." Accordingly, defendant concludes, "the expenses for changing [the victim's] phone number and her house locks, including the costs for renting a temporary residence and taking time off work to facilitate changing the locks, were unrelated." That argument fails for two reasons. First, it is premised on an inaccurate description of the record. In fact, the state did present evidence that defendant knew where the victim lived. The victim testified at the restitution hearing that defendant "found out my home address" and that the "district attorneys" notified her that her "personal information was let out." Second, defendant frames the analysis too narrowly. The pertinent inquiry is not whether defendant was convicted of calling the victim or going to her home, but rather whether the victim's need to change her phone number and locks *resulted* from the criminal activities on which defendant's convictions were based. The record includes evidence supporting that causal connection. It is undisputed that defendant's violations of the SPO caused the victim to

suffer severe panic attacks and fear of defendant, and the victim testified that she changed her locks *because* defendant had learned her home address. Moreover, the record also supports an inference that the safety measures the victim took helped her manage the psychological trauma caused by defendant's crimes. In sum, the record establishes that defendant's criminal activity was a "but for" cause of the expenses that the victim incurred. Accordingly, the trial court did not err in imposing restitution for the costs the victim incurred for changing her phone number and locks, including the costs of a temporary residence and lost time from work.

In arguing to the contrary, defendant relies in part on *State v. Steckler*, 236 Or App 524, 237 P3d 882 (2010), suggesting that it holds that expenses associated with preventing future crimes are necessarily unrelated to the crimes for which a defendant already has been convicted. But the *Steckler* holding is not so broad. In that case, a defendant was convicted of robbing two Rite Aid pharmacies. Under federal law, the pharmacies were required to submit forms to the Drug Enforcement Agency (DEA) describing the security measures that the pharmacies were taking to prevent future thefts. One of the pharmacies' managers indicated that Rite Aid planned to install a surveillance system in that pharmacy; based on his conversations with other Rite Aid personnel, the manager "believed that doing so would be the most cost-effective security measure that would satisfy the DEA." *Id.* at 526. The trial court ordered restitution that included the expense of installing a surveillance system in that pharmacy. *Id.* at 527. We reversed that aspect of the restitution award. However, we did not do so because security measures taken to prevent future crimes are *per se* unrecoverable. Indeed, *Steckler* does not address under what circumstances restitution awards may include expenses related to the implementation of security measures which, necessarily, relate at least in part to the prevention of future crimes. Rather, we reversed because the state had proved only that the DEA required Rite Aid to complete a form stating what safety measures it planned to take; the state did not prove that the DEA had required the pharmacy "to take any particular measures at all," much less install

a surveillance system. *Id.* at 529. Accordingly, we rejected the state's argument that the pharmacy would not have purchased the system but for the defendant's crime. Thus, *Steckler* differs from this case on a critical point—here, the record does include evidence that the victim would not have taken security measures but for defendant's repeated criminal violations of the SPO.

Defendant also contends that the cost to obtain a police report from a different city "did not result from the acts at issue" and therefore "was not causally connected to permit restitution for that expense." We disagree. The victim sought treatment for panic attacks brought on by defendant's criminal activities. The victim's counselor recommended, as part of treatment for those panic attacks, that "it might be a good idea" to collect a police report about defendant's conduct in another city. The testimony about the counselor's recommendation may not be weighty, but it is "some evidence" from which the trial court could have found that the expense resulted from defendant's criminal activities, and that is sufficient for purposes of our review. *Cf. Jordan*, 249 Or App at 100 (affirming restitution award on the basis that "some evidence" in the record showed the necessity of naturopathic treatments and organic foods to treat a brain injury the victim suffered as a result of the defendant's criminal activity).

To summarize, because evidence in the record supports the trial court's determination that the victim's economic damages resulted from defendant's criminal activities, we conclude that the trial court did not err in imposing restitution in this case.

Affirmed.