DEHOOG, P. J.
*786 Defendant appeals a judgment of conviction entered after he pleaded no contest to *646 assault in the fourth degree constituting domestic violence. Defendant assigns error to the trial court's imposition of restitution. He argues that the state did not present evidence to support the court's finding that defendant's criminal activity caused the victim's damages or that the damages were reasonably and necessarily incurred, both of which are prerequisites to the imposition of restitution. We conclude that the trial court erred in imposing restitution because there is no evidence in the record from which the court could infer that defendant's criminal activity was the reasonably foreseeable "but for" cause of the victim's losses. Accordingly, we reverse the award of restitution.[1]
Defendant pleaded no contest to a charge of assault in the fourth degree constituting domestic violence, which alleged that he "did unlawfully and intentionally cause physical injury to [the victim], and the assault was committed in the immediate presence of or witnessed by the [victim's] minor child[.]" He stipulated that there was a factual basis for his plea of no contest.
At sentencing, the state explained that defendant's charges arose from the following events. Defendant and the victim were in a relationship. At the time of the offense, the two had been in the bathroom arguing. The victim left the bathroom. Defendant followed her out and slapped her on the side of the face with an open hand. The victim left the home and locked herself in a car. Defendant used a key to open the door, yanked the victim out of the car, struck her again on the face, pushed her down, and briefly dragged her. The victim described her pain as having been a five or six on a scale of one to 10 at the time of the incident, but considerably less about an hour later when she spoke to law enforcement.
At a subsequent restitution hearing, the state requested restitution in the amount of $4,366.06. The victim *787 did not attend the hearing. The state presented one witness, Flock, a claims examiner for the Department of Justice, Crime Victim Services Division (CVSD), who testified that she had provided services to the victim in relation to defendant's case. According to Flock, CVSD paid the victim a total of $4,366.06 consisting of $40.00 for a physician, $1,948.98 for loss of earnings, $1,345.00 for chiropractic care, and $1,032.08 for acupuncture.
Flock also described CVSD's restitution process. Flock explained that, when she receives an application for compensation, she reviews it, together with any police reports or other information provided. Because the victim in this case sought compensation for lost earnings, Flock first verified her income through her employment and her work release through her doctor, then paid the victim accordingly. Flock testified that it was the "same thing" as far as the two medical billings were concerned. Flock explained that she had received reports from the "medical people" and that the victim was "allowed to" receive five acupuncture visits and five chiropractic visits.[2] Flock also testified that an applicant must tell her whether they are seeking services for stress or physical injuries, but that, in this case, the stress "pretty much went hand in hand" with the victim's physical needs. Over defendant's objection, the trial court permitted Flock to further testify that, according to the chart notes that CVSD required for the claim, the victim's doctor had indicated that all of the expenses were reasonable and necessary.
In opposing the state's restitution request, defendant argued that the state had not presented any evidence that the victim suffered specific damages that were causally connected to defendant's conduct. Defendant acknowledged that the state had established through Flock's testimony that CVSD had paid the victim, but he argued that no evidence-including that testimony-established a connection between that need for compensation and the defendant's conduct.
*788 The trial court granted the requested restitution. The court explained: "I think that *647 Ms. Flock's testimony is sufficient here to prove the relation to this case and that the damages relate to this case."
Whether the prerequisites for imposing restitution have been met is ultimately a legal question that will depend on the trial court's findings of fact. State v. Akerman , 278 Or. App. 486, 490, 380 P.3d 309 (2016). We review whether a trial court complied with the requirements for imposing restitution for errors of law. State v. Herfurth , 283 Or. App. 149, 152, 388 P.3d 1104 (2016), rev. den. , 361 Or. 350, 393 P.3d 1176 (2017). But we will uphold the trial court's findings of fact so long as there is any evidence in the record to support them, State v. Carson , 238 Or. App. 188, 191, 243 P.3d 73 (2010), and "[w]e review the evidence supporting the trial court's restitution order in the light most favorable to the state," State v. Kirkland , 268 Or. App. 420, 421, 342 P.3d 163 (2015).
ORS 137.106 authorizes a trial court to order restitution when a person is convicted of a crime that results in economic damages. State v. Parsons , 287 Or. App. 351, 356, 403 P.3d 497, adh'd to as modified on recons. , 288 Or. App. 449, 403 P.3d 834 (2017). To support an award of restitution, the state must produce sufficient evidence of (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two. Id. at 356-57, 403 P.3d 497. "Economic damages," for purposes of ORS 137.106, "has the meaning given that term in ORS 31.710, except that the term does not include future impairment of earning capacity." State v. Romero-Navarro , 224 Or. App. 25, 28, 197 P.3d 30 (2008), rev. den. , 348 Or. 13, 227 P.3d 1172 (2010). And, in relevant part, ORS 31.710(2)(a) defines economic damages as
"objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity * * *."
Notably, although economic damages need not be objectively verified , they must be objectively verifiable . Id. ; Statev.
*789 McClelland , 278 Or. App. 138, 142, 372 P.3d 614, rev. den. , 360 Or. 423, 383 P.3d 862 (2016).
"The requirement of a causal relationship means that the defendant's criminal activities must be a 'but for' cause of the victim's damages and that the damages must have been a reasonably foreseeable result of the defendant's criminal activities." Parsons , 287 Or. App. at 357, 403 P.3d 497. "Although defendant's criminal activities must be a 'but for' cause of the victim's economic damages, the damages need not be the direct result of defendant's criminal activity." State v. Pumphrey , 266 Or. App. 729, 734, 338 P.3d 819 (2014), rev. den. , 357 Or. 112, 346 P.3d 1212 (2015) (emphasis in original). As a general matter, the requirement of reasonable foreseeability is a factual question for the court. State v. Ramos , 358 Or. 581, 597, 368 P.3d 446 (2016).
As he did at the restitution hearing, defendant argues on appeal that the state failed to produce evidence that he caused the victim's damages. That is, defendant does not dispute that the victim suffered objectively verifiable damages, but he disputes that there was sufficient evidence to find that his criminal activity caused those objectively verifiable damages. "[T]he 'record must support a nonspeculative inference that there is a causal relationship between the defendant's criminal activities and the victim's economic damages.' " Parsons , 287 Or. App. at 357, 403 P.3d 497 (quoting Akerman , 278 Or. App. at 490, 380 P.3d 309 ). As stated above, we review whether there is any evidence in the record to support the finding that a causal relationship existed. In response to defendant's argument on that point, the state asserts that Flock's testimony was sufficient to support the trial court's finding of such a nexus. For the reasons that follow, we disagree.
The state's argument requires us to view Flock's testimony-that CVSD compensated the victim for expenses "related to" this case-as supporting the finding that whatever injuries the victim sustained (which the record does not disclose) were caused by, and a reasonably foreseeable result of, defendant's assaultive conduct. But Flock's testimony *648 does not support that inference. Although one could reasonably infer from that testimony that the victim suffered objectively verifiable economic damages in the amount *790 awarded, that evidence does not support the inference that defendant's criminal activity was the reasonably foreseeable "but for" cause of those damages.[3]
Pumphrey , a case in which we concluded that the state had produced sufficient evidence of causation, is helpful in illustrating why the evidence presented here was insufficient in that regard. In Pumphrey , we held that evidence in the record supported the finding of a causal connection between the defendant's criminal activity of stalking the victim and the victim's resulting economic damages. 266 Or. App. at 736, 338 P.3d 819. In that case, the victim testified that she had changed her phone number and locks, received medical treatment, and gone to counseling, all as a result of the defendant's stalking. Id. at 730-31, 338 P.3d 819. The trial court ordered restitution to compensate the victim for those economic damages. On appeal, the defendant challenged the order, arguing that he was not convicted of calling the victim or going to her home and that he therefore could not be required to pay the victim's phone and lock-related expenses. We rejected that argument, emphasizing that the pertinent inquiry is "whether the victim's need to change her phone number and locks resulted from the criminal activities on which defendant's convictions were based." Id. at 735, 338 P.3d 819 (emphasis in original). We concluded that the evidence in that case, which was that the victim knew that the defendant had discovered her home address, that he had called her previous phone number at least once before, and that she had suffered severe panic attacks and fear due to the defendant's stalking behavior, collectively provided a sufficient foundation to enable the trial court to find the required causal connection. Id . at 735-36, 338 P.3d 819. Specifically, we concluded that the record could support the inference that the safety measures that the victim took helped her manage the psychological trauma caused by *791 the defendant's crimes; accordingly, we affirmed the restitution award. Id. at 736, 338 P.3d 819.
In contrast, in this case, the record contains no evidence as to what injury or condition the victim sought to remedy through acupuncture and chiropractic care, much less how that need was causally related to defendant's criminal activity. Unlike the victim in Pumphrey , the victim here did not testify that she had received those treatments as a result of defendant's assault. Moreover, Flock's testimony provided no evidence from which that causal relationship could be inferred. See, e.g. , State v. Jordan , 249 Or. App. 93, 100, 274 P.3d 289, rev. den. , 353 Or. 103, 295 P.3d 50 (2012) (relying on testimony from the victim's wife about expenses that the victim had incurred in treating a brain injury caused by the defendant's intoxicated driving). Unlike testimony that a particular injury or condition resulted from defendant's criminal conduct, simply stating that CVSD provided compensation "related to" a case-even if deemed reasonable and necessary by the victim's doctor-does not provide a nonspeculative basis to support the inference that there was a causal relationship.
We recognize that this case is distinct from those in which the record contained no information whatsoever regarding the requested restitution amounts. See, e.g. , State v. Almaraz-Martinez , 282 Or. App. 576, 581, 385 P.3d 1234 (2016) ("The record here contains no medical bills, affidavits or other evidence that the requested restitution amounts were incurred, let alone evidence that the requested amounts were reasonable."); State v. Harrington , 229 Or. App. 473, 477, 211 P.3d 972, rev. den. , 347 Or. 365, 222 P.3d 1091 (2009) ("The state points to no evidence of value in the record of this case and no basis for drawing an inference that the value of the *649 items stolen totaled $5,843.40."). Unlike those cases, the state in this case presented testimony by Flock as to the amount of the expenses incurred. Nonetheless, that testimony provided no basis from which the trial court could infer that the victim's economic damages resulted from defendant's criminal activities. Thus, even though Flock's testimony was sufficient to support the finding that the victim suffered economic damages in the amount awarded, it could not support the finding *792 that defendant's criminal activity was a reasonably foreseeable "but for" cause of those damages.
Award of restitution reversed; otherwise affirmed.

In light of that resolution, we do not address defendant's other argument that there was insufficient evidence to prove that the victim's medical bills were reasonably and necessarily incurred.

Flock did not explain who -CVSD or a medical provider-had "allowed" that treatment. She did say that "[t]hat's all we ever allow unless a doctor writes a recommendation for additional."

On appeal, the state observes that Flock's efforts on behalf of the victim were governed by various statutes and administrative rules. See, e.g. , ORS 147.035(1) -(2)(a)-(b) (authorizing CVSD to compensate victims for, among other things, reasonable medical expenses); OAR 137-076-0020(1) (defining compensable "necessary services" as those required "as a direct result of a crime"). The state fails, however, to explain how the identification of such authority for the first time on appeal can provide an evidentiary basis to support the trial court's finding that the requisite causal relationship existed.