Submitted December 18, 2013, affirmed November 26, 2014, petition for review allowed April 9, 2015 (357 Or 143)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**EMA RAMOS,**
*Defendant-Appellant.*

Washington County Circuit Court
C092342CR; A150423

340 P3d 703

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Doug M. Petrina, Senior Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

### SERCOMBE, P. J.

Defendant set fires in her restaurant and made an insurance claim for the resulting damage to restaurant equipment. She was subsequently convicted of arson, in connection with setting the fires, and attempted aggravated theft, in connection with the fraudulent insurance claim. On appeal, she challenges only the restitution that the trial court ordered her to pay. First, she contends that any award of restitution violated either the Sixth Amendment to the United States Constitution or Article I, section 17, of the Oregon Constitution. The parties agree, as do we, that those arguments were not preserved, and we conclude that the purported error is not plain. Accordingly, we do not reach the merits of defendant's constitutional arguments. Alternatively, she challenges the restitution that she was ordered to pay to her insurance company, Oregon Mutual Insurance Group (Oregon Mutual). Defendant contends that some of that restitution was improperly ordered under ORS 137.106, the statute authorizing restitution in criminal cases. As to that assignment of error, we conclude that the challenged expenses were appropriate subjects of restitution. Accordingly, we affirm.

The facts related to this appeal are undisputed. After defendant was found guilty, the state sought restitution awards to Shalimar Properties (defendant's landlord), State Farm Insurance (the landlord's insurer of the premises), and Oregon Mutual (defendant's insurer of the contents of the premises). The state and defendant stipulated to $42,532.32 in restitution to Shalimar Properties and State Farm Insurance, and the trial court ordered that restitution. The state also sought restitution of $28,417.98 to Oregon Mutual.[1] The state provided evidence that Oregon Mutual had paid various sums totaling that amount to a law firm, a forensics company, two investigators, and a court reporting company in connection with its investigation and

---

[1] At the restitution hearing, the state indicated that the amount of potential restitution to Oregon Mutual that had been discussed at trial was about $28,000, but "that's been updated since then to $34,135.52." However, the only evidence in the record is of requested restitution to Oregon Mutual of $28,417.98. *See* ORS 137.106(1)(a) (district attorney shall present to the court evidence of the nature and amount sought in restitution).

processing of defendant's claim, and to assist it in cooperating with the state's investigation of the fires and prosecution of defendant. Defendant disputed the propriety of some parts of that restitution, but, after a hearing, the trial court ordered that defendant pay Oregon Mutual the full amount.

In her first assignment of error, defendant argues that the trial court erred in ordering any restitution because—under either the Sixth Amendment or Article I, section 17—a restitution award must be based on jury findings or a valid jury waiver, neither of which occurred in this case. The parties agree—as do we—that defendant did not raise that issue below, but defendant asks us to review it as error apparent on the record.

Generally, we will not consider an unpreserved issue on appeal. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). Nonetheless, we may review an unpreserved assignment of error as one "apparent on the record" under ORAP 5.45(1)—also known as "plain error"—if certain conditions are met: (1) the error is one of law; (2) the error is "apparent," in that the "legal point is obvious, not reasonably in dispute"; and (3) the error appears on the record, such that we need not go outside the record or choose between competing inferences to find it, and the facts constituting the error are irrefutable. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Even when those conditions are satisfied, we must determine whether to exercise our discretion to consider the error and, if we choose to consider it, articulate our reasons for doing so. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). For the reasons below, the legal points that defendant raises are not "obvious" and, accordingly, not appropriate subjects for plain error review.

Defendant first argues that the Sixth Amendment, as construed in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2003), requires that a jury must find the facts that provide the basis for restitution, unless the defendant waived the right to a jury determination. In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 US at 490. Four years later, in *Blakely*, the Court illuminated what it meant when it referred to a "prescribed statutory maximum" sentence. It is, the Court explained, the

> "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* * * * In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose *without* any additional findings."

542 US at 303-04 (emphasis in original).

Defendant concedes that, at the time the trial court imposed restitution, we had held that, even if *Apprendi* and *Blakely* applied to restitution, the imposition of restitution under ORS 137.106 did not run afoul of the principles announced in those cases. *State v. McMillan (A112613)*, 199 Or App 398, 403, 111 P3d 1136 (2005). In *McMillan*, we explained that the facts necessary to impose restitution under ORS 137.106 are not facts that increase the penalty to which a defendant is subject beyond the statutory maximum, because the statutory maximum includes restitution for the full amount of the victim's pecuniary damages.[2] *Id.*; *see also State v. Webster*, 220 Or App 531, 535, 188 P3d 329, *rev den*, 345 Or 318 (2008) (applying reasoning of *McMillan* to restitution under ORS 811.706, which permits the imposition of restitution for automobile accident-related damages; statutory maximum sentence encompasses amount of damages caused by the person as a result of the incident that gave rise to the charges for which the defendant was convicted); *State v. Travalini*, 215 Or App 226, 234, 168 P3d 1159 (2007), *rev den*, 344 Or 110 (2008) (rejecting argument that trial court ran afoul of the Sixth Amendment by imposing restitution without having submitted the finding of facts underlying restitution to the jury; declining to overrule *McMillan*); *State v. Mendez*, 211 Or App 311, 314, 155 P3d 54, *rev den*, 343 Or 160 (2007) (rejecting argument that, under *Apprendi*, the determination of the amount of the victim's

---

[2] The 2005 Legislative Assembly amended ORS 137.106 to change the word "pecuniary" to "economic." Or Laws 2005, ch 564, § 2.

"economic damages" for purposes of restitution should have been submitted to the jury); *State v. Black*, 208 Or App 719, 721 n 1, 145 P3d 367 (2006) (same).

Defendant contends, however, that the holding of *McMillan* was erroneous under *Southern Union Co. v. U.S.*, 567 US ___, 132 S Ct 2344, 183 L Ed 2d 318 (2012).[3] In *Southern Union Co.*, the defendant, a natural gas distributor, had been charged with, *inter alia*, storing mercury without a permit "on or about September 19, 2002 until on or about October 19, 2004," in violation of the Resource Conservation and Recovery Act of 1976 (RCRA) and was convicted of that charge after a jury trial. *Id.* at ___, 132 S Ct at 2349 (internal quotation marks omitted). RCRA violations are punishable by a fine of not more than $50,000 for each day of violation. The defendant objected to a proposed $38.1 million fine (the maximum for each of the 762 days between September 19, 2000 and October 19, 2004) because the jury could have found it guilty even if it had found only a one-day violation. Therefore, the defendant maintained, the only violation that the jury necessarily found was for one day, and imposing a fine greater than $50,000 would require factfinding by the court in contravention of *Apprendi. Id.* at ___, 132 S Ct at 2349. The Supreme Court held that the rule of *Apprendi* applies to the imposition of criminal fines. *Id.* at ___, 132 S Ct at 2357. In reaching that conclusion, the Court observed that "[c]riminal fines, like * * * other forms of punishment, are penalties imposed by the sovereign for the commission of offenses" and that "the amount of a fine, like the maximum term of imprisonment or eligibility for the death penalty, is often calculated by reference to particular facts [such as] the amount of the defendant's gain or the victim's loss[.]" *Id.* at ___, 132 S Ct at 2350-51. The government conceded that the trial court had made factual findings (*i.e.*, about the number of days that the defendant had violated RCRA) that increased the fine that the court imposed. *Id.* at ___, 132 S Ct at 2352. In doing so, the court took action that was "exactly what *Apprendi* guards against: judicial factfinding

---

[3] *Southern Union Co.* was decided after the trial court ordered restitution in this case. However, as explained in *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003), whether error is "apparent" is determined by reference to the law as of the time the appeal is decided.

that enlarges the maximum punishment a defendant faces beyond what the jury's verdict or the defendant's admissions allow." *Id.* at ___, 132 S Ct at 2352.

Defendant contends that, after *Southern Union Co.*, there is no dispute that a jury must determine the facts that set the maximum amount of restitution that a court may order a defendant to pay. In defendant's view, *Southern Union Co.* establishes that *McMillan* and its progeny were erroneous. Defendant maintains that, under ORS 137.106, the maximum amount of restitution that a court can impose without factual findings is zero. Accordingly, the jury verdict does not contain the information necessary to allow the court to impose restitution greater than zero and, to impose restitution in an amount greater than zero, the court must engage in the kind of factfinding that *Apprendi* and related cases explain is inconsistent with the Sixth Amendment.

The state, for its part, contends that it is not "obvious" that *Apprendi* applies to restitution or that *McMillan* was wrongly decided. The state observes that *Southern Union Co.* addressed only the imposition of criminal fines and did not address restitution at all, let alone what constitutes a statutory maximum for restitution purposes or whether *Apprendi* would apply in the restitution context. The state also observes that, both before and after *Southern Union Co.*, courts outside Oregon have uniformly held that *Apprendi* and *Blakely* do not apply to restitution orders, and some of those courts have applied reasoning similar to that in *McMillan*.

We agree with the state that any error under the Sixth Amendment in this case is not plain. For one thing, as the state correctly notes, *McMillan* is not directly called into question by *Southern Union Co.* because that case did not address restitution. Moreover, the reasoning in *McMillan* may or may not be inconsistent with *Southern Union Co.*— and that uncertainty means that the legal point that defendant raises is not obvious.

In *Southern Union Co.*, the jury's verdict was equally consistent with a finding of a one-day violation and a 762-day violation; to order a fine greater than $50,000, the trial court had to find facts beyond those evident from

the verdict. 567 US at \_\_\_, 132 S Ct at 2356. In *McMillan*, by contrast, we explained that "[t]he statutory maximum is * * * the amount of [economic] damages as determined by the court, and no more." 199 Or App at 403. In other words, under Oregon's statutory restitution scheme, there is only one restitution outcome that is consistent with a jury's verdict—restitution for the full amount of the victim's economic damages—and so restitution cannot go beyond the jury's verdict or increase the penalty for the crime beyond the statutory maximum. By that reasoning, determinations that underlie a restitution award can never exceed the jury's verdict.[4]

On the other hand, it may be—as defendant argues—that the "natural next step" is to apply reasoning similar

---

[4] Other courts that have considered similar issues in the wake of *Southern Union Co.* have uniformly concluded either that judicial determinations underlying restitution awards do not violate the Sixth Amendment or that any error in the restitution context was not plain under *Southern Union Co. See U.S. v. Rogers*, 2014 WL 4401044 at *4 (6th Cir 2014) (rejecting argument that *Southern Union Co.* requires jury factfinding for restitution); *U.S. v. Rosbottom*, 763 F3d 408, 419-20 (5th Cir 2014) (error in restitution not plain under *Southern Union Co.*; reasoning in part that *Apprendi* is inapposite in the restitution context because no statutory maximum applies): *U.S. v. Green*, 722 F3d 1146, 1149-51 (9th Cir), *cert den*, \_\_\_ US \_\_\_, 134 S Ct 658 (2013) (error in restitution context not plain under *Southern Union Co.*; reasoning in part that *Southern Union Co.* concerned a determinate punishment scheme with statutory maximums, while restitution carries no statutory maximum and is instead pegged to the amount of a victim's loss); *U.S. v. Day*, 700 F3d 713, 732 (4th Cir 2012), *cert den*, \_\_\_ US \_\_\_, 133 S Ct 2038 (2013) (logic of *Southern Union Co.* reinforces the conclusion—uniform among the federal circuits before *Southern Union Co.*—that *Apprendi* does not apply to restitution because *Southern Union Co.* makes clear that *Apprendi* requires jury determinations only of those facts that can be used to increase the penalty for a crime beyond the statutory maximum and restitution does not increase the penalty for a crime beyond the statutory maximum); *People v. McKinley*, No 307360, 2013 WL 2120278 at *8 (Mich Ct App May 16, 2013), *vac'd on other grounds*, 496 Mich 410, 852 NW2d 770 (Mich 2013) (*Southern Union Co.* requires proof beyond a reasonable doubt of only those facts that are used to elevate a sentence above the statutory maximum; because there is no prescribed maximum under Michigan's restitution scheme, that the amount of restitution ordered varies with the defendant's conduct does not offend due process); *Smith v. State*, 990 NE2d 517 (Ind Ct App 2013), *transfer den*, 994 NE2d 732 (Ind 2013) (same; relies on *Day*). *See also U.S. v. Sigillito*, 759 F3d 913, 934-36 (8th Cir 2014) (concluding that any error in the forfeiture context was not plain under *Southern Union Co.* because forfeiture provisions have no statutory maximum and, accordingly, are not subject to the jury factfinding requirement that applies to determinate sentencing; "a judge cannot exceed his constitutional authority by imposing a punishment beyond the statutory maximum if there is no statutory maximum" (internal quotation marks and brackets omitted)); *U.S. v. Phillips*, 704 F3d 754, 769-70 (9th Cir 2012), *cert den*, \_\_\_ US \_\_\_, 133 S Ct 2796 (2013) (similar).

to that in *Southern Union Co.* to restitution. Restitution, like fines, is a form of punishment. *State v. Hart*, 299 Or 128, 138-39, 699 P2d 1113 (1985). In *Southern Union Co.*, the potential amount of the fine ranged from $50,000 to $38.1 million and depended upon the trial court determining the predicate fact (number of days of violation) in order to arrive at the amount to award. Similarly, in defendant's view, the statutory maximum for restitution can range from zero to an "indeterminate, potentially vast amount" and depends upon the trial court determining predicate facts (the amount of the victim's damages) in order to arrive at the amount to award. So viewed, the statutory maximum allows for a range of restitution awards, as did the statutorily uncertain fine in *Southern Union Co.*, and so defendant may be correct that we must overrule *McMillan* in light of *Southern Union Co.*

Whatever the ultimate outcome, there is a reasonable dispute about whether the Sixth Amendment requires jury factfinding under Oregon's restitution scheme. Accordingly, any error is not apparent, and we will not reverse the trial court on this point.

Defendant next argues that Article I, section 17, requires jury determination of the facts underlying restitution. Under Article I, section 17, "[i]n all civil cases the right of Trial by Jury shall remain inviolate." Defendant again concedes that precedent is against her, recognizing that Oregon courts have consistently held that Article I, section 17, does not apply to the determination of restitution. *E.g., Hart*, 299 Or at 139 (holding that criminal defendant was not entitled to a jury trial on the issue of restitution under ORS 137.106); *State v. N. R. L.*, 249 Or App 321, 332, 277 P3d 564 (2012), *aff'd*, 354 Or 222, 311 P3d 510 (2013) (holding that youth in juvenile delinquency proceeding was not entitled to a jury trial on the issue of restitution under ORS 419C.450); *State v. Hval*, 174 Or App 164, 181, 25 P3d 958, *rev den*, 332 Or 559 (2001) (holding that criminal defendant was not entitled to a jury trial on the issue of restitution under the Oregon Vehicle Code). Defendant—as of the time of her brief—predicts that the Oregon Supreme Court will reverse our decision in *N. R. L.* and extend the civil jury trial right to restitution determinations. She requests that

we "recognize that the law is unsettled in this area and *** consider forestalling further litigation in this case by anticipating the [S]upreme [C]ourt's decision in *N. R. L.* by reversing the trial court's restitution order in this case."

Ultimately, defendant pins her hopes on *N. R. L.* being decided in her favor before we decide her appeal. Only then, under *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (holding that whether error is "apparent" is determined by reference to the law as of the time the appeal is decided), would any error in awarding restitution without jury findings be plain. The Supreme Court has now decided *N. R. L.*, but not in a manner favorable to defendant's position. To the contrary, in *N. R. L.*, the court held that a restitution determination in a juvenile delinquency proceeding is not civil in nature and that Article I, section 17, therefore does not require a jury trial of those determinations. *State v. N. R. L.*, 354 Or 222, 234, 311 P3d 510 (2013). In reaching that conclusion, the court relied on, and certainly did not retreat from, *Hart*, which reached the same conclusion about restitution determinations under ORS 137.106 in criminal cases. *N. R. L.*, 354 Or at 226-27. It is not plain that Article I, section 17, requires a jury trial on the factual predicates to restitution. Defendant's unpreserved argument to that effect does not qualify for review as error apparent on the record.

We turn to defendant's second assignment of error. As noted, in this assignment of error, defendant disputes parts of the restitution that she was ordered to pay to Oregon Mutual, with whom she had an insurance policy for the contents of her restaurant. We review sentencing decisions, including restitution orders, for legal error. *State v. Ferrara*, 218 Or App 57, 67-68, 178 P3d 250, *rev den*, 344 Or 539 (2008).

Along with two counts of arson, defendant was convicted of one count of attempted aggravated theft by deception. The state's theory of that charge was that defendant, with intent to defraud, attempted to obtain Oregon Mutual's property by creating a false impression (that the fire had been set accidentally and not through her own fault) that she did not believe to be true when she filed her insurance claim.

In other words, as the state put it in its opening statement at trial, "She's attempting to steal more than $10,000 through fraud from the Oregon Mutual Insurance Company, which was her insurance company." Accordingly, Oregon Mutual was the victim of defendant's attempted theft by deception and, the state contended, was entitled to restitution for the economic damages that it suffered as a result of defendant's commission of that crime.

The evidence surrounding defendant's crimes and Oregon Mutual's expenses was as follows. Defendant set fire to the restaurant in December 2008, and, within a day, called Oregon Mutual to make a claim for loss to business property. Oregon Mutual investigated the claim. Oregon Mutual hired attorney Daniel Thenell of the law firm Smith Freed & Eberhard (Smith Freed) in December 2008 to "provide legal guidance to the insurance company to determine its coverage obligations" and to "help[] steer the investigation into the cause and origin of the fire and whether there would be coverage for the fire." At defendant's trial, Thenell explained that his "practice is a bit unique, [in that] I do coverage investigations for insurance companies." The majority of his work involves insurance claims "where there is some suspicion of insurance fraud or misrepresentation in order to obtain insurance benefits."

Thenell himself participated quite actively in the investigation. He also retained others to assist in the investigation: a private fire investigation firm, ORCA Fire Investigations (ORCA), to investigate the cause and origin of the fire; CASE Forensics to examine and test electrical components in order to determine the cause and origin of the fire; and Myron Sanders, a private investigator with Expert Investigations, to take witness statements and gather information. Thenell ordered a credit check on defendant that revealed defendant's financial situation, including the fact that she was behind on her home mortgage.

Thenell, Ryan Fields of ORCA, and Ivan VanDeWege of CASE Forensics inspected the scene soon after the fires. Fields examined the property and took photographs and samples of materials from the scene. VanDeWege assisted with the collection of evidence, took photographs, and tested

the restaurant's electrical system. CASE Forensics tested and retained the materials that Fields and VanDeWege had collected.

Also as part of Oregon Mutual's investigation of this claim, defendant submitted to an examination under oath in late January 2009. The examination under oath was transcribed.

Ultimately, defendant's claim to Oregon Mutual was denied "within 35 days of the loss" because of defendant's misrepresentation.

As of the date of trial, Oregon Mutual had expended $28,417.98. The state presented the following evidence supporting its request for restitution in that amount to Oregon Mutual: (1) invoices from Smith Freed for lawyer and paralegal time, and costs; (2) invoices from CASE Forensics for time and expenses of investigation, evidence storage, and time and expenses of grand jury testimony; (3) invoices from ORCA for time and expenses of investigation, time and expenses of grand jury testimony; (4) invoices from Expert Investigations for time and expenses of investigation; and (5) an invoice from Zaro|Pietka Realtime Reporting for court reporter services related to defendant's examination under oath.

Defendant objects to two categories of restitution: (1) attorney fees paid to Smith Freed and (2) expenses related to CASE Forensics' and ORCA's employees' grand jury and trial testimony. She alternatively contends that the restitution award should not have included any expenses that Oregon Mutual incurred after it denied her claim.[5] The state responds that all the challenged categories of restitution are objectively verifiable monetary losses resulting from defendant's criminal activities and, thus, are appropriate

---

[5] We note that defendant makes passing, undeveloped suggestions that none of the restitution awarded to Oregon Mutual was proper. However, she develops arguments related only to the fees paid to Smith Freed, the expert witness fees for appearance at grand jury and trial, and those expenses incurred after Oregon Mutual denied her claim. To the extent that defendant's brief could be understood to argue that other parts of the restitution award to Oregon Mutual were improper, we reject that undeveloped argument without further discussion. *See, e.g., Cunningham v. Thompson*, 188 Or App 289, 297 n 2, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004) ("Ordinarily, the appellate courts of this state will decline to address an undeveloped argument.").

subjects of restitution. For the reasons that follow, we agree with the state.

We begin our analysis by setting out the relevant statutes. ORS 137.106 provides, in part:

> "(1)(a) When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court * * * evidence of the nature and amount of the damages. * * * If the court finds from the evidence presented that a victim suffered economic damages, * * * the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages * * *."

For the purposes of that statute, "economic damages" is defined by ORS 31.710(2)(a):

> "'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past * * * impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."[6]

As we recently reiterated in *State v. Pumphrey*, 266 Or App 729, 733, 338 P3d 819 (2014), there are three prerequisites to an order of restitution: (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two. (Citing *State v. Carson*, 238 Or App 188, 192, 243 P3d 73 (2010); *State v. Stephens*, 183 Or App 392, 395, 52 P3d 1086 (2002)).

To the extent that defendant contends that "economic damages" are limited to those that would be recoverable in a civil action, we reject that argument. In 2005,

---

[6] The statutory definition of "economic damages" also includes "future impairment of earning capacity." ORS 31.710(2)(a). However, that aspect of the definition does not apply to restitution awarded under ORS 137.106. ORS 137.103(2)(a).

the Legislative Assembly amended ORS 137.103 and ORS 137.106 to expand the scope of restitution. Under the former version of the statutes, a victim was entitled to restitution if the victim had suffered "pecuniary damages" as a result of a defendant's criminal activities. ORS 137.106 (2003), *amended by* Or Laws 2005, ch 564, § 2. "Pecuniary damages," in turn, was defined as "all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities [listing examples]." ORS 137.103 (2003), *amended by* Or Laws 2005, ch 564, § 1. After the amendments, a victim is entitled to restitution of "economic damages," which term—as noted above—has the broad meaning set out in ORS 31.170(2)(a): "objectively verifiable monetary losses [listing examples]." *See also* Tape Recording, House Committee on Judiciary, HB 2230, Jan 24, 2005, Tape 137, Side A (statement of Fred Boss, Chief Counsel of the Oregon Department of Justice's Civil Enforcement Division; introducing the bill on behalf of its sponsor, the Attorney General's Restitution Reform Task Force, and explaining that the bill was intended to replace the term "pecuniary damages"—and specifically including the requirement that the damages would have been recoverable in a civil action—with the concept of "economic damages").[7]

---

[7] Suggestions in some of our cases that the "recoverable in a civil action" requirement still applies to restitution are *dicta* and we disavow them. *E.g.*, *State v. Labar*, 259 Or App 334, 336-37, 314 P3d 328 (2013), *rev den*, 355 Or 317 (2014) (stating that the "economic damages that a court may award as restitution to a crime victim are the economic damages that the victim could recover against the defendant in a civil action for the defendant's conduct" in a case in which the state did not argue that restitution damages no longer require a civil theory of recovery); *State v. White*, 249 Or App 166, 167-68, 274 P3d 313 (2012) (stating that, for purposes of determining the full amount of a victim's damages under ORS 137.106, the court may consider the damages recoverable in a civil action arising out of the crime of conviction, but disallowing challenged restitution because it was not an objectively verifiable monetary loss); *State v. Carson*, 238 Or App 188, 192, 243 P3d 73 (2010) (stating that trial courts may "impose restitution for damages recoverable in a civil action arising out of the facts or events constituting" the defendant's criminal activities in a case that turned on construction of the defendant's plea agreement (internal quotation marks omitted)). *Cf. State v. Algeo*, 354 Or 236, 239, 242, 245, 311 P3d 865 (2013) (the court asked the parties to brief whether a court may grant restitution that exceeds the amount that petitioner could have recovered in a civil action but declined to address crime victim's argument that ORS 137.106 now requires restitution "in full" of a victim's damages because the legislature has limited that court's review of crime

We turn to the question of whether there was a sufficient causal connection between defendant's criminal activities and the challenged parts of Oregon Mutual's economic damages. As we explained in *Pumphrey*, a defendant's criminal activities must be a "but for" cause of the victim's economic damages. 266 Or App at 734 (citing *State v. Ceballos*, 235 Or App 208, 215, 230 P3d 954, *rev den*, 348 Or 669 (2010)); *State v. Bullock*, 135 Or App 303, 307, 899 P2d 709 (1995)). The damages need not, however, be the direct result of the defendant's criminal activities. *Pumphrey*, 266 Or App at 734 (citing *Stephens*, 183 Or App at 396; *Bullock*, 135 Or App at 307).

In *Pumphrey*, the victim obtained a stalking protective order (SPO) against the defendant, which the defendant was convicted of violating. The defendant challenged five items of restitution: (1) the cost of changing the victim's phone number; (2) the cost of changing locks on the victim's home; (3) the cost of the victim renting a temporary residence; (4) the victim's lost wages from one day's work when she facilitated changing her locks; and (5) the cost of obtaining police records from a different incident in a different city. It was undisputed that the defendant's violations of the SPO caused the victim to suffer severe panic attacks and fear, and the record supported an inference that, by taking safety precautions and other actions, the victim addressed the psychological trauma caused by the defendant's violations of the SPO. We concluded that, because there was evidence that the need for those expenses resulted from the defendant's criminal actions, the causal connection was sufficient. *Id.* at 735-36; *see also Ceballos*, 235 Or App at 214-15 (rejecting the defendant's argument that, because the decedent someday would have died anyway, there was an insufficient causal connection between his killing the victim's decedent and the decedent's funeral expenses); *Stephens*, 183 Or App

victims' claims under ORS 147.535(3) to considering whether the trial court committed constitutional error); *State v. Kephart*, 249 Or App 360, 277 P3d 570 (2012) (parties' dispute hinged on whether parties stipulated to the application of the 1991 version of the restitution statutes: the defendant argued that 1991 version applied and that civil theory of recovery was necessary, while the state argued that the current version applied and that, accordingly, no civil theory of recovery was necessary; the defendant did not dispute the state's assertion that restitution was permissible under the current version of the restitution statutes).

at 397 (the defendant's criminal activities of exercising control over, possessing, and using a car without the owner's permission—which included leaving the car unprotected in a friend's yard—facilitated the theft of the car's wheels and tires; thus, the link between the criminal activities and the damage that occurred was sufficient to support restitution).

On the other hand, where there is not even a "but for" connection between a defendant's criminal activities and a victim's expenses, we have held that restitution is not proper. *See State v. Steckler*, 236 Or App 524, 237 P3d 882 (2010). In *Steckler*, the defendant had robbed a pharmacy. The pharmacy then installed a surveillance system. The state put on evidence that, because it had been robbed, the pharmacy had to report planned safety measures to the DEA; however, it put on no evidence that the DEA had required it to install the surveillance system. Accordingly, we concluded that the state had failed to prove that the pharmacy would not have incurred the expense but for the robbery. *Id.* at 528-29; *see also Pumphrey*, 266 Or App at 736-37.

In this case, defendant, with intent to defraud, made a false claim on her insurance policy with Oregon Mutual. It is undisputed that, as a result of defendant's knowingly false claim, Oregon Mutual undertook an investigation and that the need for that investigation flowed only from defendant's false claim. It is also undisputed that Oregon Mutual's investigation addressed the harm posed by defendant's actions, *i.e.*, the possibility of paying out on a false claim. Put another way, but for defendant's false claim, Oregon Mutual would not have incurred any of the expenses of investigating that claim, including the attorney fees paid to Smith Freed in connection with leading and participating in the investigation.

As to the expenses that Oregon Mutual incurred after it decided to deny defendant's claim (which include the challenged charges related to CASE Forensics' and ORCA's employees' grand jury and trial testimony), the record supports an inference that those expenses were incurred because of defendant's criminal activities and obligations that arose for Oregon Mutual as a result of defendant's criminal activities. Those expenses included amounts that

Smith Freed charged Oregon Mutual in the course of facilitating Oregon Mutual's cooperation with investigations by the State Fire Marshal and Oregon State Police (OSP), and the state's prosecution of defendant—including providing documentation to those public officials and agencies—as well as the charges related to CASE Forensics' and ORCA's employees' grand jury and trial testimony.

First of all, it is undisputed that, had defendant not intentionally set fires (committing arson) and made a false insurance claim (committing attempted theft), there would have been no investigation by the State Fire Marshal or OSP, and no prosecution by the state. Thus, defendant's criminal actions instigated those investigations and prosecution, and, in turn, resulted in the expenses that Oregon Mutual incurred in connection with those investigations and prosecution, regardless of whether it incurred those expenses before or after it denied defendant's claim. Moreover, Oregon Mutual's participation in those investigations and prosecution was not optional and, in fact, was a predicate to it obtaining any restitution at all. Under ORS 476.270(1), an insurance company must make a report to the State Fire Marshal whenever the company has reason to believe that a fire loss to its insured was caused by incendiary means.[8] Once an insurance company has provided that report, the insurance company must release any information relating to that loss that public officials request. ORS 476.270(2). Similarly, an insurance company must cooperate with and provide any requested nonprivileged information to law enforcement or other agencies that are investigating or prosecuting suspected criminal conduct involving insurance. ORS 731.592(1), (2). If the insurer fails to cooperate or provide information under ORS 731.592(1) and (2), it is not eligible for restitution under ORS 137.106. ORS 731.592(5).

Defendant's intentional conduct in setting fires and submitting a false insurance claim were the but for cause of investigations by the State Fire Marshal and OSP, and the

---

[8] The adjective "incendiary" means "of, relating to, or involving a deliberate burning of property." *State v. Luers*, 211 Or App 34, 54, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007) (citing *Webster's Third New Int'l Dictionary* 1141 (unabridged ed 2002)).

state's prosecution. Oregon Mutual's participation was, by law, a necessary element of those investigations and prosecution, regardless of whether that participation occurred before or after Oregon Mutual denied defendant's claim. The expenses that Oregon Mutual incurred after it denied defendant's claim were not so remote from defendant's criminal activities that there was no causal connection between them. The trial court did not err in ordering the challenged items of restitution.

Affirmed.