No. 116 February 20, 2025 19

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

COREY ALLEN POOL,
*Defendant-Appellant.*

Washington County Circuit Court
22CR18356; A181102

Ricardo J. Menchaca, Judge.

Argued and submitted October 22, 2024.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Supplemental judgment imposing restitution reversed in part; remanded for resentencing; otherwise affirmed.

**EGAN, J.**

In this criminal appeal, defendant challenges the trial court's supplemental judgment awarding restitution.[1] Defendant contends that the state's evidence as to three items of restitution was insufficient to establish "economic damages," as defined in ORS 31.705(2)(a), and therefore, the trial court erred in imposing a restitution award for those items under ORS 137.106(2)(a). For the reasons explained below, we reverse in part, remand for resentencing, and otherwise affirm.

"We review the trial court's imposition of restitution for legal error, remaining mindful that we are bound by the trial court's findings, including reasonable inferences, if they are supported by any evidence in the record." *State v. Boyar*, 328 Or App 678, 679, 538 P3d 1225, *rev den*, 371 Or 771 (2023). "[W]e presume that a trial court implicitly resolves factual disputes consistently with its ultimate conclusion" where those facts are necessary to its conclusion and supported by the record. *Pereida-Alba v. Coursey*, 356 Or 654, 670-71, 342 P3d 70 (2015). Accordingly, we state the facts consistently with that standard.

Defendant and the victim were in a romantic relationship. After they separated, defendant entered the victim's apartment and damaged her property, including one tire on her car, her surfboard, bicycles, scuba diving gear, and plants. Afterwards, the victim installed security cameras, which captured defendant puncturing a second tire on her car. Each of the two times that defendant slashed a tire, the victim took the vehicle to Les Schwab Tire Center to replace the damaged tire with a used tire. However, after experiencing vehicle problems, the victim took her car to a dealership. The dealership informed her that she needed to replace all four tires because all-wheel-drive vehicles like hers require that the tires have identical traction, and, after Les Schwab replaced the two tires, not all the tires had

---

[1] Defendant pleaded guilty to and was convicted of attempted first-degree burglary (Count 1) and stalking (Count 7) in Case No. 22CR18356.

identical traction. The victim paid the dealership $750 for four new tires.

Based on defendant's conduct, he was charged with seven offenses.[2] While defendant was on release awaiting trial for those charges, he continued harassing the victim, and she obtained a stalking protective order against defendant in May. Defendant violated the stalking protective order twice between May and June, resulting in additional charges.[3] In June, the victim's apartment lease was up for renewal, but she decided to end her lease because of defendant's conduct. Her landlord withheld $366 from her security deposit for general apartment cleaning fees.

Defendant entered into a plea agreement to resolve all of the charges.[4] As part of defendant's plea agreement, he pleaded guilty to attempted first-degree burglary and stalking. Defendant agreed to pay a $4,585.84 compensatory fine, which included costs that the victim had incurred at Les Schwab for the two punctured tires and a towing service, but restitution was left open.

At the restitution hearing, the state sought $910 to replace the victim's surfboard, $366 for the amount withheld from her apartment security deposit, and $750 for the four new tires that she purchased from the dealership. Ultimately, the trial court ordered defendant to pay $5,346 in restitution for damages that included: (1) $455 to repair the surfboard; (2) $366 for the security deposit loss; and (3) $375 for the replacement of two tires by the dealership.

Regarding the surfboard, the trial court acknowledged that it was "unclear to [the trial court] how much

_____

[2] The state charged defendant in Case No. 22CR18356 with two counts of burglary in the first degree, criminal mischief in the first degree, stalking, two counts of criminal mischief in the second degree, and theft in the third degree.

[3] Defendant was charged with violating a court's stalking protective order and criminal mischief in the third degree in Case No. 22CR26755. The trial court granted the state's motion to consolidate Case No. 22CR18356 and Case No. 22CR26755.

[4] In Case No. 22CR18356, defendant pleaded guilty to attempted burglary in the first degree (Count 1) and stalking (Count 7) and the trial court dismissed all other counts. In Case No. 22CR26755, defendant pleaded guilty to violating a stalking protective order (Count 1), and the trial court dismissed the charge for criminal mischief (Count 2).

the repair [for the knife cuts on the surfboard] would cost," and it ordered defendant to pay $455, which was half of the replacement value of $910. The victim could not state whether the surfboard was still functional and did not take it to a shop to obtain an estimate for the repair cost. For the apartment security deposit, the trial court found that it was reasonable that the victim had to move out "unexpect-edly" due to safety concerns and, as a result, lost some of her security deposit. As for the tires, the trial court awarded the victim $375, which represented the cost of two of the four new tires. Thus, defendant was ordered to pay for a total of four tires: the two used tires from Les Schwab, which were included in the compensatory fine, and two new tires from the dealership, as part of restitution. The trial court also ordered defendant to pay all or part of the victim's requested amounts for lost wages, counseling sessions, scuba gear, security camera installation, bike part replacements, and plant replacements.

Defendant appeals, arguing that the trial court erred in ordering three specific items of restitution: (1) the cost of repairing the surfboard; (2) the apartment security deposit; and (3) the replacement of the two tires from the dealership.

We begin our analysis by setting out the relevant statutes. If a trial court finds a victim suffered economic damages, a trial court shall order that the "defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court." ORS 137.106(2)(a). "'Economic damages' means objectively verifiable monetary losses including but not limited to *** reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, which-ever is less." ORS 31.705(2)(a).

"In short, there are three prerequisites to an order of restitution: (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two." *State v. Pumphrey*, 266 Or App 729, 733, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015). The state has the burden of proving those facts by a preponderance of the evidence. *State v. Yocum*,

247 Or App 507, 512, 269 P3d 113 (2011), *rev den*, 352 Or 25 (2012). "A crime victim 'incurs' an expense for the purposes of awarding restitution if the victim becomes 'liable or subject to' pay the expense." *State v. Steckler*, 236 Or App 524, 528, 237 P3d 882 (2010) (quoting *State v. Romero-Navarro*, 224 Or App 25, 29, 197 P3d 30 (2008), *rev den*, 348 Or 13 (2010)). Questions related to the amount of economic damages "pose a factual question for the court." *State v. Andrews*, 366 Or 65, 71, 456 P3d 261 (2020) (internal quotation marks and citation omitted).

"[D]amages need not be the *direct* result of the defendant's criminal activity." *Pumphrey*, 266 Or App at 734 (emphasis in original). Rather, the defendant's criminal activities must be a "but for" cause of the economic damages that the victim incurs. *State v. Gerhardt*, 360 Or 629, 633, 385 P3d 1049 (2016). And the economic damages must be a reasonably foreseeable result of the defendant's criminal activities. *State v. Ramos*, 358 Or 581, 596, 368 P3d 446 (2016). In *Ramos*, the Supreme Court concluded that the statutory definition of "economic damages" requires, "when appropriately raised," a reasonable foreseeability analysis. *Id.* at 587.

A.  *Surfboard*

Defendant argues that the trial court erred by ordering him to pay restitution for the cost of repairing the victim's surfboard because the amount was not supported by evidence regarding the cost of repair.[5] A trial court commits error if it orders an amount of restitution that is not supported by the record. *State v. Morgan*, 274 Or App 161, 165, 359 P3d 1242 (2015). As noted above, "objectively verifiable monetary losses" includes "reasonable costs incurred for repair or for replacement of damaged property, whichever is less." ORS 31.705(2)(a). To authorize a restitution award, the evidence in the record must support an objectively verifiable monetary loss suffered by the victim. *See*

---

[5] As an initial matter, the state argues that defendant did not preserve his first assignment of error because he did not argue below that the record did not support imposing $455 in restitution to pay for the repair of the surfboard. We conclude that defendant preserved his argument regarding the surfboard because he objected to paying for the replacement cost and noted that the state did not present evidence as to repair costs.

*Morgan*, 274 Or App at 165 (reversing a restitution award for stolen sprinklers because the "evidence [could not] rationally support the 'particular amount' of restitution that the trial court ordered" when the record was devoid of any factual basis for the original requested amount or the reduced figure); *see also* ORS 31.705(2)(a) (defining "economic damages" as "objectively verifiable monetary losses").

    In this case, although the state offered evidence of the replacement value of the surfboard, it did not provide evidence that the surfboard was unrepairable and would need to be replaced. The victim testified that she did not take the surfboard to a shop to inquire whether the damage was, in fact, repairable, and, if so, what would be the cost of repair. As a result, the trial court denied the victim's initial request for a restitution award that would replace the surfboard, and it identified the restitution award amount for the surfboard based on its "amateur view" of the exhibits and how much it thought it would cost to repair.

    The trial court's finding that the surfboard would cost $455 to repair is unsubstantiated by the record—as evinced by the court's own statement that "[i]t's unclear * * * how much the repair would cost to repair the stab wounds in the board and whether that can be replaced." Hence, the trial court did not have sufficient evidence to compare the repair versus replacement costs and award whichever is a lesser amount to the victim for the surfboard. ORS 31.705(2)(a). Based on the record, there was insufficient evidence to demonstrate that the victim incurred a cost that amounted to $455 for the surfboard, when the evidence did not rationally support that "particular amount" of restitution for replacement, and the record was "devoid of any factual basis" for the reduced figure for repair. *Morgan*, 274 Or App at 165. Thus, we conclude that the trial court erred in ordering a restitution award of $455 for the surfboard.

B.  *Security Deposit*

    Next, defendant argues that the trial court erred in finding that his criminal activities were a "but for" cause of the victim's lost deposit money, because she would have incurred those costs in the future when she moved out

"irrespective of defendant's criminal conduct." The trial court found that, absent defendant's criminal acts—which included two contacts of the victim at her apartment in the two months before her lease ended and after she had a stalking protective order in place—the victim would not have "had to move out somewhat unexpectedly * * * due to safety issues" and would not have incurred the move-out costs on that specific occasion. The court's finding is supported by the victim's testimony at the restitution hearing that she moved for safety reasons, and she would have stayed had defendant not broken into her home. *See Andrews*, 366 Or at 71 (in restitution cases, "but for" causation is a factual question for the trial court).

Defendant's reliance on *State v. Wilson*, 193 Or App 506, 92 P3d 729 (2004), and *State v. Steckler*, 236 Or App at 524, to argue that he is not liable for the deposit money is misplaced. We reversed the restitution award in each of those cases because there was no evidence that the defendant's crimes had caused the victim's economic damages. *Wilson*, 193 Or App at 510-11 (rejecting restitution for labor expense because there was no evidence that the defendant's prison escape caused the correction facility employees to work additional hours; the state "incurred [the costs] irrespective of specific violations of law" like the defendant's); *Steckler*, 236 Or App at 528-29 (rejecting restitution for surveillance systems because there was no proof that the defendant's robberies caused the store to incur such expenditures when it intended to install such systems regardless of defendant's crimes).

Here, by contrast, defendant's crimes caused the victim to move on short notice, and that "unexpected" move caused her to incur the expenses. The possibility that, absent defendant's criminal conduct, she might have moved at some point in the future and, at that time, might—but would not necessarily—have incurred similar costs does not prohibit the inference that defendant's conduct caused her to incur the expenses. *Accord State v. Ceballos*, 235 Or App 208, 210, 215-16, 230 P3d 954, *rev den*, 348 Or 669 (2010) (rejecting homicide defendant's argument that his restitution should not include funeral expenses for the victim because the

victim "would someday have died anyway and would have had funeral expenses," explaining that, "if defendant had not killed the decedent, the funeral expenses at issue would not have been incurred"). We conclude that the trial court did not err in awarding restitution in the amount of $366 for the loss from the victim's apartment security deposit.

C.   *Tires*

Lastly, defendant contests the amount that the trial court imposed for the replacement of the victim's two additional tires from the dealership. In defendant's view, the two new tires that the court included in the restitution were to replace the used tires from Les Schwab, which defendant had already paid for as part of the compensatory fine. He argues that Les Schwab's replacement of the two slashed tires with used tires with different traction or tread was negligent and that it was not reasonably foreseeable that his criminal acts would lead to the victim paying the dealership to correct Les Schwab's original repair. *See State v. Alonso*, 284 Or App 512, 519-20, 393 P3d 256 (2017) (restitution amounts are limited to reasonably foreseeable damages—the harm "must be within the general class of harms that one reasonably would anticipate might result from the defendant's conduct" (internal quotation marks and citation omitted)).

Reasonable foreseeability is, "as a general matter, a factual question for the [trial] court." *Ramos*, 358 Or at 597 (citing *Cont. Plants v. Measured Mkt.*, 274 Or 621, 625-26, 547 P2d 1368 (1976)). As mentioned above, we assume that the "trial court implicitly resolve[d] factual disputes consistently with its ultimate conclusion" where those facts are supported by the record. *Pereida-Alba*, 356 Or at 670-71.

At the restitution hearing, the victim agreed with the prosecutor that she bought the new tires from the dealership "[a]s a result of * * * one being punctured and the rest needing to be replaced because they had to have consistent tread." That is, she "had to replace all four [tires] because the tread didn't match, and [her car is] an all-wheel-drive vehicle." On cross-examination, the victim agreed that "the reason" that she replaced the tires at the dealership "was because the two tires that Les Schwab installed had

a different traction on them." As noted above, the court awarded restitution for two of the new tires, making defendant responsible for the cost of a total of four tires.

In defendant's view, the victim's testimony on cross-examination required the court to find that, but for Les Schwab's negligent replacement of the two tires with used tires that had different traction, the victim would not have had to replace all four tires. Thus, defendant argues, the court erred in requiring defendant to pay for the two dealership tires, because Les Schwab's negligence was not foreseeable to defendant.

That is one possible inference from the victim's testimony. However, we understand the court to have drawn a different inference, which was also permissible: that, although the initial replacements had different traction, the need to replace all four tires existed regardless of Les Schwab's work because the victim's vehicle is "an all-wheel-drive vehicle" and so all the tires "had to have consistent tread." That understanding is consistent with the court's choice to compensate the victim for a total of four tires: the two used tires, as part of the compensatory fine, and two of the new tires, as part of restitution. Under that view of the facts, defendant's criminal conduct required the victim to replace all four tires, and the court reimbursed her for replacing all four tires.

Given that understanding, defendant's argument that he should not be ordered to pay restitution for Les Schwab's negligence is based on an incorrect factual premise—that Les Schwab's initial replacement of the two tires caused the victim to later have to replace more tires, and, thus, increased defendant's restitution. However, on the court's view of the facts, Les Schwab's initial replacement of the two tires had no effect on the number of tires defendant was ultimately required to pay for; rather, defendant's criminal conduct directly resulted in the need to replace all four tires. If anything, the fact that the initial two tires were used decreased defendant's financial obligations; if the victim had initially replaced all four tires with new tires, defendant would have paid more overall. Because the initial replacement was not the cause of the victim's need to

purchase more tires later—to the contrary, that need existed from the time defendant slashed the first tire—the later tire purchase was not unforeseeable to someone in defendant's position. We conclude that the trial court did not err in ordering the payment of restitution for the two new tires in the amount of $375.

In summary, we conclude that: (1) the trial court erred in ordering a restitution award of $455 for the repair of the surfboard when there was no evidence in the record to support that particular figure; (2) the trial court did not err in awarding a restitution amount of $366 for the security deposit loss, because defendant's criminal acts, including violating a stalking protective order, were the "but for" cause of the victim unexpectedly needing to move on short notice and losing her deposit money as a result; and (3) the trial court did not err in requiring defendant to pay restitution for the replacement of two tires from the dealership, at a cost of $375.

Supplemental judgment imposing restitution reversed in part; remanded for resentencing; otherwise affirmed.