No. 1146          December 31, 2025          263

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN SCOTT MILLS,
*Defendant-Appellant.*

Clackamas County Circuit Court
21CR48406; A180048

Kathie F. Steele, Judge.

Argued and submitted October 23, 2025, Ridgeview High School, Redmond.

Anne K. Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs were Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Colm Moore, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Joyce, Judge, and O'Connor, Judge.

O'CONNOR, J.

Portion of amended judgment requiring defendant to pay restitution in the amount of $22,578.25 to CCIS and $9,784.25 to the City of Molalla vacated and remanded for resentencing; otherwise affirmed.

**O'CONNOR, J.**

Defendant appeals from an amended judgment and challenges only the award of $33,009.92 in restitution. While in his residence in Molalla, defendant fired a rifle out of a window, damaging a police patrol car. The state charged defendant with crimes based on the incident, and he pleaded guilty to six offenses and no contest to another offense.

On appeal, defendant raises two assignments of error, both challenging the restitution award. Defendant first argues that the trial court erred when it imposed $22,578.25 in restitution to City County Insurance Services (CCIS) for the cost to replace the patrol car. Second, he argues that the court erred when it imposed $9,784.25 in restitution to the City of Molalla for the cost of re-wiring the replacement patrol car. We conclude that the trial court erred when it imposed those restitution amounts because, even assuming that the trial court found that the cost to repair the damaged car exceeded the cost to replace the car, as required by ORS 31.705(2)(a),[1] that finding was not supported by evidence in the record. Accordingly, we vacate the portion of the amended judgment requiring defendant to pay restitution in the amount of $22,578.25 to CCIS and $9,784.25 to the City of Molalla and remand for resentencing.

## BACKGROUND

"We review the trial court's imposition of restitution for legal error, remaining mindful that we are bound by the trial court's findings, including reasonable inferences, if they are supported by any evidence in the record." *State v. Boyar*, 328 Or App 678, 679, 538 P3d 1225, *rev den*, 371 Or 771 (2023). "'We presume that a trial court implicitly

---

[1] ORS 31.705(2)(a) provides:

"'Economic damages' means *objectively verifiable monetary losses* including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

(Emphasis added.)

resolves factual disputes consistently with its ultimate con-
clusion' where those facts are necessary to its conclusion and
supported by the record." *State v. Pool*, 338 Or App 19, 20,
565 P3d 73 (2025) (quoting *Pereida-Alba v. Coursey*, 356 Or
654, 670-71, 342 P3d 70 (2015) (brackets omitted)). We state
the facts consistently with that standard.

Defendant fired a rifle out the window of his resi-
dence, damaging a police patrol car belonging to the City
of Molalla. Based on defendant's conduct, he was charged
with 13 offenses. Defendant entered into a plea agreement
to resolve all of the charges. As part of defendant's plea
agreement, he pleaded guilty to two counts of first-degree
criminal mischief. Based on one of those counts the state
sought restitution for the cost to replace the damaged car—
$22,578.25 to CCIS, $9,784.25 to the City of Molalla, and
$647.42 to SAIF Corporation.

The city sent the damaged patrol car to a body
shop. The body shop estimated that it would cost $16,655.85
to repair the car. The city then forwarded the estimate to
their insurance provider, CCIS, to review and authorize
the repair. CCIS provided the city with a payment equal
to the replacement value of the car, which was $31,168.75,
and it sold the damaged car for $9,821.00. Thus, CCIS spent
$22,578.25 to provide the city with the cost to replace the
car. Additionally, the city spent $9,784.25 re-wiring the new
car.

At the restitution hearing, the CCIS adjuster
explained why CCIS decided to pay the city to buy a new
car instead of paying to repair the damaged patrol car. She
stated that the body shop's estimate was "rough" and "not []
final" and that CCIS "determined that it would be more effi-
cient and cost effective to total the vehicle, even though we
don't pay for loss of use, it is a burden on the police depart-
ment to repair the vehicle." CCIS relied on the auto body
shop's recommendation to total the car. CCIS would rather
work with the known cost of replacement rather than the
"unknown" cost of repair. An expert for defendant estimated
that it would have cost about $4,964.85 to repair the dam-
age to the car and testified that the auto body's estimate
included unnecessary procedures and costs.

The trial court agreed with aspects of the defendant's expert's testimony that criticized the estimate from the body shop. It noted, however, that CCIS had to make a difficult decision about whether to proceed with repairing the patrol car, which could have been more expensive than the estimate, or to pay for a replacement patrol car, which was a fixed amount. The court explained that

> "ultimately it may have been cheaper, it may have been more expensive than what they could have done. Could they have waited and—and replaced it a higher cost? Perhaps. Perhaps.
>
> "And then you would have also had damages or perhaps what waiting would have cost, 'cause I certainly don't have any evidence in front of me about that, all right?"

The court awarded the restitution requested by the state because it was "reasonable in [the court's] mind because it's more likely than not that that is appropriate." In an amended judgment, the trial court imposed $33,009.92 in restitution: $22,578.25 to CCIS, $9,784.25 to the City of Molalla, and $647.42 to SAIF Corporation.

## ANALYSIS

The legislature created a procedure for restitution in criminal cases, set out in ORS 137.106. As relevant here, "When a person is convicted of a crime *** that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or as provided in paragraph (b) of this subsection, evidence of the nature and amount of the damages." ORS 137.106(1)(a). In that provision, the legislature placed the burden on the state to prove "each of the facts necessary to support the restitution award." *State v. Aguirre-Rodriguez*, 367 Or 614, 620, 482 P3d 62 (2021).

After the state presents its evidence,

> "If the court finds from the evidence presented that a victim suffered economic damages *** the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

ORS 137.106(2)(a). Economic damages, for the purposes of restitution, "[h]as the meaning given that term in ORS 31.705," with exceptions not relevant here. ORS 137.103(2)(a). That statute, in turn, defines economic damages as "objectively verifiable monetary losses including but not limited to *** reasonable costs incurred for repair or for replacement of damaged property, whichever is less." ORS 31.705(2)(a). That is, "To authorize a restitution award, the evidence in the record must support an objectively verifiable monetary loss suffered by the victim." *Pool*, 338 Or App at 23 (citing *State v. Morgan*, 274 Or App 161, 165, 359 P3d 1242 (2015)). A trial court commits a legal error if it "orders an amount of restitution that is not supported by the record." *Pool*, 338 Or App at 23.

Defendant asserts that the trial court erred when it imposed restitution for the cost to replace the damaged patrol car. Defendant argues that the trial court failed to find that the cost of replacement was less than the cost of repair, in violation of ORS 31.705(2)(a), and that even if the trial court did make that finding, such a finding was not supported by evidence in the record. The state responds that there is evidence in the record to support a finding that the damaged car needed replacement, that CCIS determined that the most cost-effective choice was to total the car and replace it, and that the trial court correctly concluded that was a reasonable decision. In his reply brief, defendant responds that ORS 31.705(2)(a) allows the court to impose only "objectively verifiable monetary losses," which includes either the cost to replace or repair damaged property—whichever is less—and that is distinct from whether it was "reasonable" to replace the car. Defendant points to *Morgan* and *Pool* to support his argument.

In *Morgan*, the defendant raised a plain-error challenge to the trial court's imposition of $3,084 in restitution. 274 Or App at 162. The defendant had stolen 860 pounds of metal sprinklers from a plant "nursery and sold them to a scrap metal business for $86." *Id*. The nursery recovered "some, but not all, of the sprinklers." *Id*. The state requested $3,000 in restitution to the nursery and $84 to the scrap metal business. *Id*. The nursery owner testified that each

of the sprinklers was worth "'approximately $10'" and esti-
mated "the total value of the sprinklers that [the] defendant
stole to be 'over $1,000.'" *Id*. The record did not indicate why
the state sought $3,000 in restitution to the nursery or why
the trial court awarded that amount. *Id*. at 163.

We explained that the "evidence [could not] ratio-
nally support the particular amount of restitution that the
trial court ordered." *Id*. at 165 (internal quotation marks
omitted). The nursery owner's testimony that the value of
the stolen sprinklers was "over $1,000" did not provide evi-
dence from which a "rational factfinder could find that the
nursery's 'reasonable and necessarily incurred' costs stem-
ming from defendant's theft amount[ed] to $3,000." *Id*. (quot-
ing the definition of economic damages in ORS 31.705(2)(a)).
Accordingly, we concluded that trial court plainly erred in
awarding $3,000 in restitution. *Id*.

In *Pool*, we relied on *Morgan* to reverse a trial
court's restitution award for the repair cost of a surfboard
that the defendant had damaged as part of criminal conduct
to which he pleaded guilty. 338 Or App at 23. The defendant
had damaged the surfboard by cutting it with a knife. *Id*. at
21. At a restitution hearing, the state sought $910 in restitu-
tion to replace the victim's surfboard. *Id*. "The victim could
not state whether the surfboard was still functional and did
not take it to a shop to obtain an estimate for the repair
cost." *Id*. at 21-22. The trial court noted that the repair cost
was "unclear" and the court "ordered [the] defendant to pay
$455, which was half the replacement value of $910." *Id*.
at 21. The court based the amount on its own view of how
much it would cost to repair the surfboard after viewing the
exhibits. *Id*. at 24.

On appeal, the defendant argued that the trial court
erred because the amount awarded for the repair cost of the
surfboard was not supported by evidence in the record. *Id*.
at 23. Relying on the definition of economic damages in ORS
31.705(2)(a) and *Morgan*, we concluded that "the trial court
did not have sufficient evidence to compare the repair versus
replacement costs and award whichever is a lesser amount
to the victim for the surfboard." *Id*. at 24. The "evidence
did not rationally support that 'particular amount' [$455]

of restitution for replacement, and the record was 'devoid of any factual basis' for the reduced figure for repair." *Id.* (quoting *Morgan*, 274 Or App at 165).

In sum, *Morgan* and *Pool* start from the legislature's decision in ORS 137.106(1) to place the burden on the state to provide evidence of a victim's economic damages. Both cases then apply the definition of economic damages in ORS 31.705(2) to determine whether the state presented sufficient evidence of a victim's "objectively verifiable economic damages" to support the trial court's restitution award. *Morgan* establishes that a trial court must base its determination of objectively verifiable monetary damages on evidence of a "particular amount" of damages, not evidence that damages are "more than" a particular amount. *Pool* applied that principle to a trial court's decision whether to impose restitution for repair or replacement costs, and *Pool* establishes that the evidence must rationally support a trial court's determination that a "particular amount" of repair or replacement costs is the lesser.

Applying those principles to this case, the evidence is insufficient to establish that the replacement cost of the damaged patrol car was less than the repair cost, in violation of ORS 31.705(2)(a). The auto body shop provided an initial estimate of $16,655.85 to repair the car and the evidence established that it could cost some amount more to repair, but how much more was uncertain. A witness from CCIS testified that the replacement value of the car was $31,168.75. Thus, the evidence in the record did not support a finding that the cost to replace the car was less than the cost to repair the car. Indeed, the evidence of the particular amount of the repair and replacement costs established that repairing the patrol car would cost less than replacing it.

The potential that the cost of repair could increase does not establish a "particular amount" that justified concluding that the cost of repair would be more than the replacement cost of $31,168.75. As the trial court stated, "ultimately it may have been cheaper" to repair the car or "it may have been more expensive * * *." In *Morgan*, the victim's testimony that the stolen sprinklers costs at least $1,000 did not rationally support the trial court's decision to award

$3,000 in restitution. In *Pool*, evidence that the replacement cost of the damaged surfboard was $910 did not justify the trial court's decision to award $455 in repair costs. Here, the auto body shop's estimate that it would cost $16,655.85 to repair the damaged patrol car, with the potential for costs to increase, does not support a finding that the cost of replacing the patrol car for $31,168.75 would be less than the cost of repairing the patrol car.

The restitution statutes do not, of course, govern CCIS's decision to pay the City of Molalla to replace the patrol car based on CCIS's own cost-benefit analysis. The record contains evidence that CCIS made a reasonable business decision, as the trial court noted. But the restitution statutes govern the amount a trial court may order a defendant to pay to a victim as restitution. Under the restitution statutes, whether an insurance company's decision was a reasonable business decision does not answer—at least not in every case—whether the state provided sufficient evidence to establish a victim's economic damages under ORS 137.106(1). The record in this case is insufficient, as we explained above. Thus, even assuming that the trial court found that the cost of replacing the patrol car was less than the cost of repairing it, as required under ORS 31.705(2), the trial court erred when it made that finding.

The state argues that the trial court implicitly made that finding and that the evidence, viewed in the light most favorable to the state, establishes "that it was more efficient and cost effective to total the vehicle, and that CCIS and the city incurred reasonable costs for replacement of damaged property." The state bases its argument on evidence that the repair estimate was preliminary, that it would increase, and that it was the uncertainty in the cost of repair that justified "totaling" the patrol car. As explained above, ORS 31.705(2), as applied in *Morgan* and *Pool*, forecloses the state's argument.

Here, the evidence in the light most favorable to the state supported a finding that the repair costs would likely be more than the initial estimate, but the witnesses could not say how much more. It may be that it was more efficient for all involved to total the patrol car and pay for a

replacement patrol car. Efficiency, however, is not the statutory standard for a restitution award. On this record, the trial court lacked sufficient evidence to conclude that the replacement cost was less than the repair cost.

## CONCLUSION

For the reasons explained above, the trial court erred when it imposed restitution in the amounts of $22,578.25 to CCIS and $9,784.25 to the City of Molalla.

Portion of amended judgment requiring defendant to pay restitution in the amount of $22,578.25 to CCIS and $9,784.25 to the City of Molalla vacated and remanded for resentencing; otherwise affirmed.