504 February 25, 2026 No. 161

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT DALE MERRITT,
*Defendant-Appellant.*

Washington County Circuit Court
24CR09889; A184708

Rebecca D. Guptill, Judge.

Submitted November 13, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Marc Brown, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

Defendant appeals a supplemental judgment requiring him to pay $10,258 in restitution for items stolen from B's garage. Defendant argues that the evidence was legally insufficient to prove that the stolen property had a fair market value of $10,258. In the trial court, defendant acknowledged that B and his insurer had "done their research" to arrive at the $10,258 amount and objected only to the state seeking the full amount in restitution. Defendant argued that "these goods should be evaluated based on their market value and the fact that they were used," noted that the evidence was that the items were in good condition, and argued for a 25 percent to 50 percent reduction to reflect the items being used. The state did not respond to that argument, and the trial court awarded the full amount. On appeal, defendant reprises his argument that the court erred in awarding the full amount. As explained below, we agree and, accordingly, reverse and remand.

ORS 137.106(2)(a) requires a court to impose "restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court." "Economic damages" are "objectively verifiable monetary losses including but not limited to *** reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less." ORS 31.705(2)(a); *see also* ORS 137.103(2)(a) (defining "economic damages" by reference to ORS 31.705). The replacement cost of lost or damaged personal property is generally "the reasonable market value of the property at the time and place of the criminal conduct," taking into account its condition. *State v. De Verteuil*, 304 Or App 163, 168, 467 P3d 80 (2020) (quoted language); *id.* at 170 ("[T]he trial court erred in *** awarding the original purchase price of the items as new items without any depreciation for their value at the time and place that defendant's criminal conduct destroyed those items."). The "market value of property is ultimately a factual matter." *State v. Onishchenko*, 249 Or App 470, 477, 278 P3d 63, *rev den*, 352 Or 378 (2012). The state bears the burden of proof regarding restitution. *State v. Pool*, 338 Or App 19, 22, 565 P3d 73 (2025).

"We review an order for restitution for legal error and are bound by the trial court's factual findings if they are supported by any evidence in the record." *State v. Kamaunu*, 341 Or App 257, 259, 573 P3d 407, *rev den*, 374 Or 419 (2025) (internal quotation marks omitted).

B testified that 24 items were stolen from his garage. To determine their value, B searched the internet for "comparable equipment." B explained that "for the most part" he searched for comparable "new items." B then sent a list to his insurer, Amica, providing an estimated value for each stolen item and supporting documentation for the "majority of the items." That list, along with supporting documentation for four items (two speakers, a bicycle, and a set of golf clubs), was admitted into evidence at the restitution hearing. The total estimated value of all items on the list was $10,258. B did not explain in his testimony how he used the information that he found on the internet to arrive at the dollar amounts on the list that he sent to Amica. Most notably, it is unclear whether B simply recorded what he thought it would cost to buy a new replacement for each item or, instead, started from the buy-new price and made some type of downward adjustment to account for the age and condition of the stolen item. The evidence tends to suggest the former but, in any event, does not allow a reasonable inference of the latter. B testified that he mostly searched for the cost of "new items" and, as to two stolen fishing reels, specifically testified that the listed value was "very close to what [he] had paid for them originally." As for the few items with documentation, it is unclear how B landed on his estimates for those items. Regarding his stolen Diamondback bicycle, B did an internet search for "diamondback bicycles," which returned new items with prices ranging from $73.65 to $3,100, and there is nothing in the record to explain why B estimated $500 for his bicycle. Regarding the two speakers, B did an internet search for the specific models, which returned an AI-generated response estimating the buy-new cost of one speaker at $1,627 and the other speaker at $999, and there is nothing in the record to explain why B estimated $1,400 and $840 for his own speakers.

An Amica employee also testified. They explained that Amica's special investigation unit analyzed B's list and

documentation and ultimately recommended paying the claim in full. Amica did so, paying $8,258 after B's $2,000 deductible. B's insurance policy is not in the record, and there was no testimony as to whether the policy required Amica to pay full replacement cost for stolen personal property (the buy-new cost) or only actual cash value (the fair market value of comparable used items). It is also possible that Amica made a reasonable business decision to pay the full claim, regardless of whether it was entirely persuaded of B's estimated values. *See State v. Mills*, 346 Or App 263, 271, ___ P3d ___ (2025) ("Under the restitution statutes, whether an insurance company's decision was a reasonable business decision does not answer—at least not in every case—whether the state provided sufficient evidence to establish a victim's economic damages under ORS 137.106(1).").

On appeal, as noted, defendant reprises his argument that the evidence was insufficient to establish $10,258 as the reasonable cost to replace the stolen items, given their used condition. The state responds that the evidence was sufficient because the fair market value of personal property is a question of fact, an owner's testimony is a proper means to prove fair market value, and both B and an Amica representative testified to researching the value of the stolen items.[1]

It is certainly true that the fair market value of an item is a question of fact and that we are bound by the trial court's factual findings if supported by any evidence. The difficulty here is that the state failed to present sufficient evidence for the trial court to find that $10,258 was the fair market value of the items in their *used* condition, rather than being the replacement cost, *i.e.*, the buy-new cost. In the end, it was the state's burden of proof, and we conclude that it fell short. At a minimum, the trial court should have treated the

---

[1] We note that neither in the trial court nor on appeal has anyone mentioned ORS 137.106(1)(c), which creates a presumption of reasonableness for certain documented costs. *See* ORS 137.106(1)(c) ("At a restitution proceeding, economic damages will be presumed reasonable if the damages are documented in the form of a record, bill, estimate or invoice from a business ***."). There is nothing in the record to suggest that the trial court *sua sponte* relied on that presumption, despite no one raising it. We therefore limit our analysis to the issue as framed by the parties. We express no opinion as to whether the statutory presumption could have been used in this case.

$10,258 as the cost of new items and made an adjustment—such as the 25 to 50 percent reduction suggested by defendant at the restitution hearing—to reflect the used condition of the stolen items. Accordingly, we reverse and remand.

Reversed and remanded.