No. 218 March 18, 2026 885

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEVIN SCOTT GROSSER,
aka Devin S. Grosser,
*Defendant-Appellant.*

Washington County Circuit Court
23CR51922; A185248

Erik M. Buchér, Judge.

Argued and submitted February 5, 2026.

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant pleaded guilty to one count of menacing constituting domestic violence, ORS 163.190,[1] and one count of interference with making a report, ORS 165.572.[2] On appeal, he only challenges the imposition of a restitution award. Viewing the evidence in the light most favorable to the trial court's disposition, *State v. Perdew*, 304 Or App 524, 527, 467 P3d 70 (2020), accepting the trial court's factual findings that are supported by any evidence in the record, and reviewing the imposition of restitution for errors of law, *State v. Skeen*, 309 Or App 288, 290, 481 P3d 402 (2021), we affirm.

Before the incident giving rise to defendant's convictions, defendant and the victim, C, shared an apartment. They have a son together; he was an infant at the time of the relevant criminal conduct. C was employed prior to the birth of their son, but she stopped working near the end of her pregnancy. Defendant and C agreed that, once the baby was born, C would stay home to care for the child and defendant would cover their living expenses.

The conduct giving rise to defendant's convictions occurred after a dispute began between defendant and C. Defendant became agitated, and C felt unsafe. She tried to leave the apartment with the baby in her arms, and defendant tried to grab the baby. Defendant threatened to kill C. C screamed for help, a neighbor came to their door, and C was able to exit the apartment. She called 911 from the neighbor's home.

After defendant pleaded guilty to two counts, the trial court imposed a two-year term of probation on each count, dismissed several other charges, and scheduled a restitution hearing. Defendant agreed that he could be liable for restitution arising out of his relevant criminal conduct, including for conduct related to the dismissed charges.

---

[1] "A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury." ORS 163.190.

[2] "A person commits the crime of interference with making a report if the person, by removing, damaging or interfering with a telephone *** intentionally prevents or hinders another person from making a report to a law enforcement agency ***." ORS 165.572.

However, defendant argued that C did not suffer economic damages and that, even if she did, no damages were a result of his conduct.

At the contested restitution hearing, C testified that she immediately moved into her parents' home after defendant's criminal conduct. She testified that she moved because she no longer felt safe staying in the apartment and was afraid of defendant. C testified that she paid $1,200 in rent per month to live at her parents' house, and receipts of her rental payments were accepted into evidence. Defendant argued that C did not suffer economic damages because "paying rent is a basic necessity of living. * * * [H]er having to pay [rent] as part of her moving out does not correlate to suffering economic damages in the way that the statute is written."

The trial court imposed $1,200 in restitution to C. At the conclusion of the restitution hearing, the trial court explicitly deemed C to be credible. The trial court also explicitly found that C was not paying any rent expenses prior to the incident, that she was afraid of defendant because of his criminal conduct, that "'but for' * * * defendant's [criminal] conduct, she would[ not] have moved out, [and] she would still be living there," and that she had to pay $1,200 in rent after leaving the apartment. The trial court determined that one month of rent was "reasonable" and imposed restitution equal to one month of rent expenses.

In a single assignment of error, defendant argues that the trial court erred by imposing the restitution award. Defendant largely reprises the arguments he made to the trial court, including that the record contains no evidence that C suffered economic damages as a result of defendant's criminal conduct or otherwise. The state responds that it proved that C suffered economic damages, and that she suffered those damages as a result of defendant's criminal conduct.

ORS 137.106 authorizes a trial court to order restitution when a person is convicted of a crime that has resulted in economic damages. *Accord State v. Parsons*, 287 Or App 351, 356, 403 P3d 497, *adh'd to as modified on recons*, 288 Or App 449, 403 P3d 834 (2017), *rev den*, 362 Or 545

(2018). To support an award of restitution, "the state must provide sufficient evidence of (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two." *Id.* at 356-57. "[T]he defendant's criminal activities must be a 'but for' cause of the victim's damages and *** the damages must have been a reasonably foreseeable result of the defendant's criminal activities." *Id.* at 357. Damages are reasonably foreseeable if "a reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages of the same general kind that the victim incurred." *State v. Ramos*, 358 Or 581, 597, 368 P3d 446 (2016).

In the context of restitution, "economic damages" are "objectively verifiable monetary losses ***[,]" ORS 31.705(2)(a), excluding "future impairment of earning capacity," ORS 137.103(2)(a). Here, evidence in the record supported the trial court's determination that C suffered economic damages in the form of rent expenses that she otherwise would not have incurred. C testified, and the court explicitly credited her testimony that defendant and C had an agreement, whereby C would care for their child and defendant would pay living expenses including rent. Evidence, including defendant's testimony and a payment receipt, supported a determination that C suffered economic damages in the amount of $1,200 for one month of rental expenses.

Sufficient evidence, namely C's testimony that she moved immediately after the incident and that she did so because she feared defendant, also supported the trial court's determination that but for defendant's criminal conduct C would not have incurred rental expenses. *See, e.g.*, *State v. Pumphrey*, 266 Or App 729, 735-36, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015) (restitution award was supported where the defendant's conduct caused the victim to experience panic attacks and fear, and the victim subsequently incurred expenses to change her phone number and locks to her home); *State v. Buswell*, 308 Or App 389, 395, 479 P3d 341 (2021) (restitution award was sufficiently supported based on evidence that the victim needed to take several days off of work after being "traumatized" by a robbery).

That determination is also supported by *State v. Pool*, 338 Or App 19, 25, 565 P3d 73 (2025), in which we determined that restitution was allowable where the victim "move[d] on short notice" due to safety risks caused by the defendant's conduct. As a result of needing to move "unexpectedly," the victim did not have time to clean her apartment, and consequently, the landlord withheld $366 from her security deposit. *Id.* at 25-26. We determined that the "unexpected" nature of the move "caused her to incur" the security deposit expense. *Id.* at 25. We explained that "[t]he possibility" that "she might have moved at some point in the future and, at that time, might—but would not necessarily—have incurred similar costs does not prohibit the inference that [the] defendant's conduct caused her to incur the [security deposit] expense[.]" *Id.* Likewise, in this case, because of defendant's conduct, the victim needed to move unexpectedly and on short notice. In so doing, she incurred rental expenses. The possibility that she "might—but would not necessarily—have incurred" rental expenses in the future does not prohibit the trial court's determination that defendant's conduct caused her to incur the rental expenses.

It was reasonably foreseeable that C would incur rental expenses as a result of defendant's criminal conduct because prior to that criminal incident C was reliant on defendant paying rental expenses, while she cared for their child. Given the agreement and ongoing practice of defendant paying rental expenses for C, a reasonable person in defendant's position would have foreseen that C could reasonably incur rental expenses should defendant's conduct make C's living arrangement unsafe. *See Ramos*, 358 Or at 597 (providing the test for reasonably foreseeable damages). It was reasonable for a victim in C's position to immediately remove herself and her child from the apartment where defendant threatened her and attempted to pull the child from her arms. The trial court acknowledged that defendant would not have an indefinite responsibility to pay for C's rental expenses, but that restitution for one month of rental expenses was appropriate given C's reasonable need to unexpectedly and immediately pay rental expenses that she would not have had to pay but for defendant's criminal conduct. We agree.

Affirmed.